### ARGUED AND DETERMINED

##### IN THE

# SUPREME JUDICIAL COURT

##### OF

# MASSACHUSETTS.

---

HARRIET A. PAYNE *vs.* JASON L. DEXTER.

SEABOARD TRADING COMPANY *vs.* HARRIET A. PAYNE.

EDWARD STEINBRUGGE *vs.* SEABOARD TRADING COMPANY.

BENJAMIN M. SHIPMAN *vs.* EDWARD STEINBRUGGE.

Dukes County. November 15, 1911. — January 5, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DeCOURCY, JJ.

*Practice, Civil*, Exceptions, Auditor's report, Ordering verdict. *Evidence*, Presumptions and burden of proof. *Contract*, Validity. *Sale. Lord's Day. Estoppel.*

Four actions of replevin for the possession of the same personal property were tried together. One who was a plaintiff in the third action and a defendant in the fourth but was not a party to either of the other two, alleged exceptions in all four cases. There having been testimony at the trial that the interest of a party in the first and second actions had been transferred to the excepting party, the exceptions for that reason were treated as properly taken in all four cases, although *it was doubted*, whether otherwise there was any right of exception in the two cases in which the excepting party was neither a plaintiff nor a defendant.

At the trial together of four actions of replevin for the possession of certain personal property, there was in evidence an auditor's report finding title in the plaintiff in the first action because of a conveyance from one who, on evidence introduced as to issues in the other actions, might have been found not to have owned the property and to have had no right to convey it to the plaintiff in the first action. *Held*, that it could not have been ruled in the first action that, "no evidence having been offered to control the auditor's report, and that report being in favor of the plaintiff, the jury must find for the plaintiff."

At the trial of an action of replevin for the possession of certain fish, an auditor's report was put in evidence finding for the defendant, and there also was evidence tending to show that in May of a certain year two persons made a partnership agreement with regard to the securing of fishing privileges in a certain locality and the catching and sale of fish, that shortly thereafter one of the partners made an agreement with the defendant, of which the other partner did not know, to manage for the defendant the business of procuring fish in the same neighborhood, and that, two days after the agreement with the defendant, the partner who was ignorant of it purchased for the partnership the fish in question, which subsequently were conveyed by him acting on behalf of the partnership to the plaintiff. *Held*, that it could not be ruled as a matter of law that the jury must find for the defendant.

In an action of replevin there was evidence tending to show that the personal property replevied formerly had belonged to a partnership, that on a Lord's day one of the partners had made an agreement as to the sale of the property to the plaintiff, that later, the agreement not being carried out, the plaintiff had attached the property in an action against the partner who had sold it to him and subsequently had procured a bill of sale of it from the other partner acting for the partnership, which he relied on to prove his title to the property in the action of replevin. *Held*, that the validity of the contract of sale made on the Lord's day was not a material issue in the case.

In an action of replevin there was evidence tending to show that the plaintiff had procured title by a bill of sale executed and delivered by one of two partners acting for the partnership, and that the partnership had the legal title to the property at the time of the delivery of the bill of sale. There also was evidence tending to show that the other partner had embezzled from the defendant, who was in no way interested in the partnership, the money used by the partnership to procure the property. There was no evidence that the partner who gave the bill of sale to the plaintiff knew of such misuse of funds by his partner. *Held*, that the misuse, in the purchasing of the property in question, of the defendant's funds by one of the partners without the knowledge of the partner who conveyed it to the plaintiff was not a material issue in the case.

If, at the trial of an action of replevin, there is evidence tending to show the existence of a partnership between two persons, one of whom, purporting to act for the partnership, conveyed to the plaintiff the personal property in question, and there also is evidence that before the conveyance to the plaintiff the other of the alleged partners in the presence of his alleged partner informed a representative of the plaintiff that the alleged partner was not his partner, the jury should not be instructed that, as matter of law, if they should find such declaration to have been made, the subsequent conveyance was of no effect.

If, at the trial of an action of replevin, there is evidence tending to show the existence of a partnership between two persons, one of whom, purporting to act for the partnership, conveyed to the plaintiff the personal property in question, and it appears that, previous to the conveyance to the plaintiff, an authorized representative of the plaintiff, knowing that the other alleged partner disclaimed the existence of the partnership, had caused the property to be seized upon attachment as the individual property of such other alleged partner in an action by the plaintiff against him, that such action never was entered in court and that no one ever put any reliance upon the attachment, the plaintiff later in the action on trial replevying the property while it was in the possession of the

attaching officer, the jury should not be instructed that the plaintiff by the previous attachment was estopped to deny that the property belonged solely to the partner in whose name he had attached it.

An action of replevin was referred to an auditor, and the hearings for one reason and another were continued from time to time until the auditor was ordered to proceed with the hearing on a certain day irrespective of whether both parties were present. A hearing accordingly was held at which only one party was present, in whose favor the auditor reported. At the trial of the action the presiding judge instructed the jury, with regard to the report, as follows: "It is a proper fact to take into consideration, in determining what weight you should give to this report, that it was an *ex parte* hearing. The evidence was *prima facie* evidence. The report is not conclusive. It is *prima facie* evidence, and that is not conclusive evidence. The parties may introduce other evidence for the purpose of controlling the report. You are not bound by the report; you are to take all the evidence together and give it such weight as you think it may be entitled to." *Held,* that the instructions were correct.

FOUR ACTIONS OF REPLEVIN respecting the sale of thirteen hundred and two barrels of alewives. Writs dated respectively August 2, 9, 20, and 23, 1906.

The cases were referred to Arthur E. Perry, Esquire, as auditor. His report was introduced in evidence. It merely contained a finding in substance for the plaintiffs in the first and third actions and for the defendants in the second and fourth. As to Harriet A. Payne, he recited that, after one Charles L. Prescott made his contract with one Edward Steinbrugge, he (Prescott) by a bill of sale dated July 16, 1906, conveyed to Harriet A. Payne his interest in the fish. The facts regarding the report are stated in that part of the charge referring to it, which is quoted below.

In the Superior Court the cases were tried together before *Stevens,* J. It appeared that Steinbrugge, doing business under the name and style of Lyon, Dupuy and Company, on March 16, 1906, made a contract in writing with Prescott by the terms of which Steinbrugge was to buy the fishing privileges in streams at East Weymouth, Bournedale and East Wareham, and Prescott was to act as manager of the streams and in the disposal of the fish, the net proceeds of the enterprise to be divided between them. On May 25, 1906, it was agreed that the terms of the contract should be extended to include the catch of alewives at West Tisbury.

There was evidence, which was contradicted, that, just before May 25, 1906, Prescott met one Andrew N. Gifford and that they then formed a partnership under the name of A. N. Gifford and

Company, by the terms of which Gifford was to secure the rights and arrange for the purchase of the alewives and Prescott was to furnish the money and they were to divide the profits equally. Gifford did arrange for the purchase and sale to him of the alewives which are the subject matter of these actions. Prescott sent to Gifford barrels belonging to Steinbrugge to pack fish in and also sent him money for expenses. There was evidence that such money was in whole or great part Steinbrugge's money. There was no evidence to show that Gifford knew whose money and barrels Prescott was using. On June 11, 1906, Prescott sold to the Seaboard Trading Company one thousand barrels of alewives, to be shipped from Vineyard Haven to New York, and the Seaboard Trading Company advanced money to him therefor, and also shipped barrels to Vineyard Haven in which the fish were to be packed.

On July 28, 1906, the Seaboard Trading Company, upon Prescott's failure to send the fish to New York, brought an action against Prescott and attached the thirteen hundred and two barrels of alewives, which are the subject of these actions, at Vineyard Haven as the property of Prescott. Later on the same day it procured from Gifford a bill of sale of the fish which Gifford executed under seal as follows: "Gifford & Co. By Andrew W. Gifford." The action never was entered in court. On August 2, 1906, Harriet A. Payne, claiming under an alleged bill of sale from Prescott, brought a writ of replevin against the deputy sheriff who was holding the fish under the attachment and obtained possession of them. On August 9, 1906, the Seaboard Trading Company brought a writ of replevin against Harriet A. Payne and the fish were delivered to it thereunder. On August 20, 1906, Steinbrugge brought a writ of replevin against the Seaboard Trading Company and obtained possession of the fish thereunder. On August 20, 1906, the Seaboard Trading Company executed to Benjamin M. Shipman a bill of sale of the barrels of alewives in question, with full power to prosecute or withdraw any suits or proceedings relating thereto, and on August 23, 1906, Shipman brought a writ of replevin against Steinbrugge and obtained possession of the fish.

Harriet A. Payne did not testify at the trial. Prescott was present but was not called as a witness. Excepting as stated in the auditor's report, there was no evidence of title in Harriet A. Payne and none that she ever took possession of the fish.

At the close of the evidence, Steinbrugge requested that the following rulings be made and instructions be given:

"1. Upon all the evidence in the case the jury must find for the plaintiff in Harriet A. Payne v. Jason L. Dexter; for the plaintiff in Edward Steinbrugge v. The Seaboard Trading Company; and for the defendants in Seaboard Trading Company v. Harriet A. Payne, and Benjamin M. Shipman v. Edward Steinbrugge.

"2. In the action Harriet A. Payne v. Jason L. Dexter, no evidence having been offered to control the auditor's report, and that report being in favor of the plaintiff, the jury must find for the plaintiff.

"3. There is no sufficient evidence in these cases to warrant the jury in finding that at the time of the making of the contract between the Seaboard Trading Company and Prescott, the fish replevied in these several actions were the subject-matter of this contract.

"4. If the jury shall find that the contract for the purchase of one thousand barrels of alewives between Prescott and the Seaboard Trading Company was made on the Lord's day, although the written evidence of it was dated on a secular day, viz., June 11, 1906, that contract is void and the Seaboard Trading Company may have no benefit from it, either for money paid or materials delivered under it to Prescott."

"7. If the jury shall find that on the twenty-fifth day of July, 1906, Prescott and Gifford and Born (representing the Seaboard Trading Company) met at the latter's room in the Mansion House in Vineyard Haven and at that meeting Prescott informed Born that Gifford was not his partner, a subsequent sale by Gifford alone, of assets alleged by Gifford to belong to a partnership existing between him and Prescott, is ineffectual to pass any title in those assets to Born.

"8. If the jury shall find that on said twenty-fifth day of July Born knew that Prescott disclaimed the existence of any partnership between Gifford and himself, and that on the twenty-seventh day of the same July he caused a writ in which the Seaboard Trading Company was plaintiff and Charles L. Prescott, defendant, to be brought and these alewives to be attached upon that writ, he is estopped from denying the title to the whole of said alewives to be in Prescott on the twenty-eighth day of the same July when

the bill of sale from Gifford to the Seaboard Trading Company was made."

"12. If the jury shall find that Prescott entered into the written contract dated May 25, 1906, with Steinbrugge doing business under the name of Lyon, Dupuy & Company, the latter became the absolute owner of all the fish taken under that contract immediately work under the contract was commenced."

The requests were refused. The judge charged the jury in substance that important questions in the case were, whether there was any partnership between Prescott and Gifford when Gifford purchased the alewives in question and when the bill of sale of them was given by Gifford to the Seaboard Trading Company, or whether there was no such partnership and Prescott in Steinbrugge's behalf had made an agency arrangement merely with Gifford, so that, when Gifford purchased the alewives, they became Steinbrugge's.

His charge with regard to the auditor's report was as follows: "This case was referred to an auditor, as is frequently done, for the purpose of having the evidence taken and the findings returned to the court. That was done. One Mr. Perry was auditor. The time for hearings was appointed. For some reason or other these hearings were continued; and Judge Sanderson gave instructions that the hearings at the specified time should go on whether both parties were represented or not. It appears in evidence that it was an *ex parte* hearing; that the Seaboard Trading Company was not represented by counsel for the reason that he was engaged in trial somewhere else and could not be there. It is a proper fact to take into consideration, in determining what weight you should give to this report, that it was an *ex parte* hearing. The evidence was *prima facie* evidence. The report is not conclusive. It is *prima facie* evidence, and that is not conclusive evidence. The parties may introduce other evidence for the purpose of controlling the report. You are not bound by the report; you are to take all the evidence together and give it such weight as you think it may be entitled to."

Without objection by Steinbrugge, the judge charged the jury as to Harriet L. Payne as follows: "It does not appear that Mrs. Payne was engaged in the business of buying and selling fish. It was contended that he conveyed to Mrs. Payne on account of cer-

tain advances she made to him. This is hearsay testimony. Mrs. Payne has not testified. Mrs. Payne is apparently an interested party. She knows, or ought to know, what the facts are in connection with this transaction, and the fact that she does not come to testify in her own behalf, a very significant fact, may be taken into consideration for the purpose of enabling you to determine whether that was a real transaction.

"If you should find upon all the evidence that Prescott made a conveyance of this fish for a valuable consideration in the regular course of trade, and he was a partner, he having the same right as Gifford, that would pass a good title to Mrs. Payne. Suppose you should find it was not made in the regular course of trade for a valuable consideration, he would have been doing what he had no right to do as a partner, and the co-partnership would not be bound by it. Suppose he was not acting as a co-partner, but acting individually in making that bill of sale to Payne, acting as an individual, as agent of . . . [Steinbrugge.] . . . If there was not any co-partnership between Gifford and Prescott these fish belong to . . . [Steinbrugge], . . . because that is a contract, and if they were bought by this man Prescott they were bought for . . . [Steinbrugge.] . . . If that was so and he was acting individually he was trying to sell . . . [Steinbrugge's] . . . fish to Mrs. Payne. He had no right to do that and she would not be entitled to a verdict."

The jury found for the plaintiffs in the second and fourth cases and for the defendants in the first and third; and Steinbrugge alleged exceptions.

*H. H. Pratt*, for Edward Steinbrugge.

*F. J. Geogan*, (*W. A. Morse* with him,) for the Seaboard Trading Company and Benjamin M. Shipman.

SHELDON, J. These cases were all tried together and verdicts were rendered against Payne and Steinbrugge. Steinbrugge, who is hereinafter called the defendant, as he was called by the judge in charging the jury, has alleged exceptions in each case. It may be doubted whether he has any right of exception in the two cases to which he was not a party; but in view of the testimony that the interest of Payne has been transferred to him, we have preferred to treat the exceptions as properly taken in all the cases.

1. Because the cases were all tried together and all the evidence

put in was to be considered in each case so far as applicable, and some of that evidence did tend to control the auditor's report in the case of Payne v. Dexter, the defendant's second request could not be given.

2. Nor could his first request have been given in spite of the auditor's report. It may be assumed, as his counsel has argued, that the agreement between him (acting under the name of Lyon, Dupuy and Company) and Prescott did not create a partnership between them and did not give to Prescott a right of property in the fish that should be procured under that contract, but that the fish so procured would become the property of the defendant; and the judge so ruled. But the bill of exceptions states that this agreement so far as it related to the fish here in question, was made on May 25, 1906, although added to the written agreement dated in the previous March. It also appeared that just before May 25, on a suggestion made by Gifford to Prescott, it was arranged between these parties that Gifford should secure the fishing privilege in Tisbury with money to be furnished by Prescott, and that Gifford and Prescott should divide equally the profits thereof; and on May 27 Gifford did secure that privilege. It was claimed by the Seaboard Trading Company, hereinafter called the plaintiff, which afterwards had dealings with Prescott and Gifford under which it claimed title to the fish in question, that the fishing privilege at Tisbury was bought by Gifford, not as an agent of Prescott, and not at all under the agreement between Prescott and the defendant, but as a member of a copartnership formed by Prescott and Gifford under the name of A. N. Gifford and Company, and that the fish which were taken there, and which are the subject of these replevin suits, were taken by and became the property of that firm, and not the property of the defendant. Upon this issue there was much evidence which raised a question for the jury to pass upon. In substance and very clearly the judge instructed the jury that if the purchase of this fishing privilege was made by Prescott, or by Gifford as Prescott's agent, under the agreement between the defendant and Prescott, then the fish taken under it became the property of the defendant, and the claim of the plaintiff failed. The cases could not have been taken from the jury.

3. The third request was rightly refused. The subject matter thereof was for the jury. As the judge said, there was nothing in

the agreement itself to show to what fish it referred; but there was other evidence. Nor, for the reasons next to be stated, was this a material question.

4. As to the fourth request, it is enough to say that as the case was submitted to the jury the agreement of June 11 between the plaintiff and Prescott was immaterial. The plaintiff's right was made to depend entirely upon the questions whether a partnership had been created between Gifford and Prescott, whether the fishing privilege in Tisbury had been acquired by that firm and the fish had become its property, whether the plaintiff had gained title to the fish under the bill of sale given to it, as it claimed, by A. N. Gifford and Company acting through Gifford, and whether that property had been finally transferred to Shipman, who brought the last of the suits. Under these circumstances the defendant was not harmed by the failure to give its fourth request.

5. It was not material to the real issues in this case whether Prescott had misused the defendant's money in his hands by applying it for the benefit of the firm of A. N. Gifford and Company. The defendant could not follow the money or its proceeds against Gifford or his firm or those claiming under them, under the circumstances here presented. There was no evidence that Prescott disclosed to Gifford his wrongful use of the defendant's money, and it could not be presumed that he had done so. If that fact had been disclosed it would have had a material bearing on the question of Gifford's good faith and whether a partnership had really been created.

6. The seventh and eighth requests could not have been given. If the partnership really existed, as the jury must have found that it did, Prescott's denial of it could not affect the rights of one dealing with the firm or with the other member thereof within the limits of the agency created by the partnership. This is elementary. The conduct of the plaintiff's agent Born in attaching the fish in behalf of the plaintiff as the property of Prescott might create an estoppel in favor of any one who claimed under that attachment or had acted under it to his injury or whose rights were destroyed or injuriously affected thereby. Such in principle are the cases relied on by the defendant. *Daniels* v. *Tearney,* 102 U. S. 415. *United States* v. *Hodson,* 10 Wall. 395, 409. But the defendant is in no such position and cannot claim the benefit of an estoppel.

7. The twelfth request was rightly refused. The defendant could not become the absolute owner of the fish at Tisbury before they were caught, although work under his agreement with Prescott already had been begun at other places. The matter of this request was correctly dealt with in what was said to the jury.

8. The judge properly ruled that the auditor's report was *prima facie* evidence. There was nothing objectionable in his other instructions as to this.

Looking at all the exceptions which have not been expressly waived, we find no error in the record.

*Exceptions overruled.*