MICHAEL SCHRENKO & another [1] vs. THEODORE C. REGNANTE
& others.[2]

No. 88-P-797.

Essex.    April 6, 1989. — May 10, 1989.

Present: BROWN, SMITH, & FINE, JJ.

*Contract,* Sale of real estate, Cancellation. *Penalty. Damages,* Liquidated
damages.

Statement of principles applicable to a liquidated damages clause in a real
estate purchase and sale agreement. [284-285]

Discussion of the issue whether a subsequent profitable sale of real estate
should be taken into consideration in assessing the reasonableness of a
liquidated damages provision in a purchase and sale agreement. [285-
286]

In a case arising out of a failed real estate transaction in which the plaintiffs
sought the return of their $16,000 deposit from the defendants who,
having subsequently received $25,000 more from third parties than the
price the plaintiffs would have paid, claimed total expenses of $18,831.62
due to the plaintiffs' breach, retained the deposit under a liquidated
damages clause in the purchase and sale agreement and, under the same
clause, sought additional damages, it was held that the clause, at least
when the defendants chose to exercise their right to seek additional
damages, provided for a penalty, not liquidated damages, and that it
would not be equitable for the defendants, having benefited financially
as a result of the buyers' breach, to retain the deposit. [286-287]

There was no merit to a claim by the buyers in a failed real estate transaction
that they were entitled to recovery under G. L. c. 93A from the sellers'
attorneys, based upon their release of a deposit to the sellers after the
buyers' default. [287]

CIVIL ACTION commenced in the Superior Court Department
on March 14, 1986.

---

[1] Joanna Schrenko.

[2] Members of the law firm Regnante, Regnante and Sterio, and the sellers
James and Jean R. Mazareas.

Motions for summary judgment were heard by *J. Harold Flannery*, J.

*George E. Richardson* for the plaintiffs.

*Carmen A. Frattaroli* for Theodore C. Regnante & others.

FINE, J. This dispute arose out of a failed real estate transaction. The buyers brought this action against the sellers for return of a deposit and against the sellers' attorneys, under G. L. c. 93A, for releasing the deposit to the sellers upon the buyers' default. A Superior Court judge ordered summary judgment for the defendants on both claims. We affirm the judgment[3] for the attorneys, but, because of one unusual aspect of the case, we reverse the judgment for the sellers on the buyers' claim for return of the deposit.

The undisputed facts are these. On July 24, 1985, the plaintiff buyers agreed to purchase the defendant sellers' property, a single-family residence in Marblehead, for $360,000. Upon signing the purchase and sale agreement, the buyers, represented by counsel, paid a $16,000 deposit. Concerning the deposit, the agreement provided: "If the buyer shall fail to fulfill the buyers' agreements herein, all deposits made hereunder by the buyer shall be retained by the seller as liquidated damages unless within thirty days after the time for performance of this agreement or any extension hereof, the seller otherwise notifies the buyer in writing." Title was to pass on November 11, 1985, and time was of the essence.

As the closing date approached, the buyers sought an extension. The sellers offered an extension but on terms unacceptable to the buyers. On the closing date (November 12, 1985, as November 11, 1985, was a holiday) the buyers defaulted. The property was returned to the market. On November 18, 1985, the sellers signed an agreement to sell the property to Mark H. and Susan W. Berey, not parties in this action, for $385,000. On the same date, the defendant attorneys, who had been holding the $16,000 deposit in escrow as attorneys for the sellers,

---

[3] The judgment did not dispose of one of the sellers' counterclaims alleging intentional infliction of emotional distress by the buyers. Separate judgment entered on the issues before us, however, under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974).

released it to the sellers. On December 2, 1985, the sellers' attorneys wrote to the buyers: "[Y]ou are advised that it is sellers' present intention to retain your deposit in the amount of $16,000.00 as liquidated damages and to hold you liable for any additional damages that may be or are incurred by my clients, as the result of your failure to consummate the purchase of the premises on the date for performance thereunder."

The sale to the Bereys took place on December 19, 1985, with the sellers receiving $25,000 more than the price the buyers would have paid. As of that date, the sellers had incurred out-of-pocket expenses attributable to the buyers' default in the amount of $10,581.62. The sellers also had to pay a broker's commission which exceeded by $8,250 the commission which would have been due on a sale to the buyers. The sellers' therefore claimed total expenses due to the buyer's breach of $18,831.62.

The motion judge's award of summary judgment to the sellers was based upon his view that the buyers had paid the deposit pursuant to a valid liquidated damage clause. The judge reasoned that it would not have been appropriate for him to consider the fact that the sellers suffered no loss, the property having been sold at a profit soon after the default, because that would have allowed the party in breach to benefit from a fortuitous change in market conditions. According to the motion judge: "When a breach occurs, a snap shot of the situation should be taken. Simply put, the subsequent sale is not in the picture."

It is undisputed that, in the circumstances, a liquidated damages clause providing for forfeiture of a $16,000 deposit in the event of a breach by the buyers would have been reasonable. The amount of the deposit, 4.4% of the purchase price, was a moderate estimate of the loss the sellers were likely to suffer in the event of a buyers' default; the damages could be expected to be difficult to prove; and such deposits are routine in purchase and sale agreements. See *A-Z Servicenter, Inc.* v. *Segall*, 334 Mass. 672, 675 (1956); *Lynch* v. *Andrew*, 20 Mass. App. Ct. 623, 627 (1985). See also Corbin, Contracts § 1060 (1964). Payment of a reasonable deposit pursuant to a liquidated dam-

age clause would ordinarily have the advantage to all parties of settling the loss in advance and avoiding litigation should the sale not go through because of the buyer's default. The sellers ordinarily could not claim that the damages exceeded the amount of the deposit, just as the buyers could not claim that the damages were less than the amount of the deposit. A liquidated damage clause, reasonable when agreed to, is enforceable. See *Graves Equip., Inc.* v. *M. DeMatteo Constr. Co.*, 397 Mass. 110, 112-113 (1986); *Lynch* v. *Andrew*, 20 Mass. App. Ct. at 627, and cases cited. Such a clause may not be enforced, however, if the amount involved is so disproportionate to the actual expenses caused by the breach as to shock the conscience of the court and make it in reality a penalty. See *A-Z Servicenter, Inc.* v. *Segall*, 334 Mass. at 675; *Lynch* v. *Andrew*, 20 Mass. App. Ct. at 627-628, and cases cited; Restatement (Second) of Contracts § 356(1) and comment b (1981). See also *Colonial at Lynnfield, Inc.* v. *Sloan*, 870 F.2d 761 (1st Cir. 1989).

The parties are at odds over whether an otherwise valid liquidated damage provision becomes unconscionable and, thus, unenforceable, when, as a result of a sale of the property soon after a breach by the buyers, the sellers suffer no actual loss or, indeed, as here, realize a profit. The issue presented, in other words, is whether the judge was correct that a "snap shot" taken at the moment of breach should determine the rights of the parties to the deposit.

We are aware of no Massachusetts precedent actually deciding whether a subsequent profitable sale should be taken into consideration in assessing the reasonableness of a liquidated damage provision. See, however, *Lynch* v. *Andrew*, 20 Mass. App. Ct. at 628 ("This was not a case in which the house sold within days of the first buyer's default, at about the same price, and without complicating factors which make the actual damages difficult to calculate with precision. It is not a case in which the liquidated damages provision is grossly disproportionate to a reasonable estimate of actual damages."). Compare *Warner* v. *Wilkey*, 2 Mass. App. Ct. 798, 799 (1974) (subsequent sale price considered when property sold for less than

original price). There is considerable authority elsewhere that goes both ways.[4] There are arguments to support either result. On the one hand, an agreement negotiated by the parties, freely entered into, and fair at the time it is made, is usually enforced against the parties. On the other hand, contract damages are intended to compensate the party not in breach for losses, and, if he clearly suffers no loss, the forfeiture of the deposit may be regarded as a penalty.

We need not resolve the issue in this case, however, because the particular liquidated damage clause before us, and the subsequent acts of the sellers pursuant to the clause, depart in a material way from the classic pattern. The clause, in effect, gives the sellers the right to consider the damages unliquidated and to seek additional damages beyond the amount of the forfeited deposit.[5] The sellers, by letter, sought to exercise that

---

[4] In a recent First Circuit case involving commercial real estate, the court refused to enforce a liquidated damage clause because, owing to a profitable sale of the property after the buyer's breach, the seller suffered no actual loss. See *Colonial at Lynnfield, Inc.* v. *Sloan,* 870 F.2d 761 (1st Cir. 1989).

The majority of States have enforced liquidated damage provisions where the seller resold the property after the buyer's default for the same or a higher price. See, e.g., *Bruce Builders, Inc.* v. *Goodwin,* 317 So.2d 868, 870 (Fla. Dist. Ct. App. 1975); *First Natl. Bank of Barrington* v. *Oldenburg,* 101 Ill. App. 3d 283, 292 (1981); *Lawrence* v. *Demos,* 70 Wyo. 56, 77-78, 82 (1952). See also *Higgs* v. *United States,* 546 F.2d 373, 377 (Ct. Cl. 1976). See also Restatement (Second) of Contracts § 356 comment b and illustration 4.

Other States, however, have refused to enforce liquidated damage clauses where the breach does not result in a loss, and the liquidated damage clause, because its enforcement would result in a windfall for the sellers, is viewed as a penalty on the defaulting buyers. See, e.g., *Freedman* v. *Rector, Wardens & Vestrymen of St. Matthias Parish,* 37 Cal.2d 16, 21-23 (1951); *Vines* v. *Orchard Hills, Inc.,* 181 Conn. 501, 514 (1980); *Benya* v. *Gamble,* 282 S.C. 624, 632 (1984).

See generally Farnsworth, Contracts § 12.18 at 900-901 (1982); Goetz & Scott, Liquidated Damages, Penalties and the Just Compensation Principle: Some Notes on an Enforcement Model and a Theory of Efficient Breach, 77 Colum. L. Rev. 554-556 (1977); Rea, Efficiency Implications of Penalties and Liquidated Damages, 13, J. Leg. Studies 147, 149-151 (1984).

[5] See Mack, Fundamentals of Buying and Selling Commercial Real Estate at 154 (MCLE, Inc. 1986) ("This puzzling clause purports to give the seller the best of both worlds — he can either keep the deposit or sue for more. It may be questioned whether this is consistent with the concept of liquidated

right. By doing so, the $16,000 deposit, instead of being a settlement agreed upon in advance, became, at the sellers' option, only the minimum amount they would receive as compensation for their losses. According to the terms of the agreement, that minimum amount had to be accepted in settlement only in the event of a loss in the amount of the deposit or less. The clause, therefore, at least when the sellers chose to exercise their rights within thirty days to seek additional damages, provided for a penalty, not liquidated damages. In these unusual circumstances, in our view, it would not be equitable for the sellers, having benefited financially as a result of the buyers' breach, to retain the deposit.

The 93A claim against the sellers' attorneys, based upon their release of the deposit to the sellers after the buyers' default, is farfetched and altogether lacking in merit. As attorneys for the sellers, they owed no special duty to the buyers. Nor did anything in the purchase and sale agreement obligate the sellers' attorneys to continue to hold the deposit for the buyers' benefit once the buyers defaulted.

The allowance of summary judgment for the defendants on the claim for return of the deposit (Count I) is reversed, and summary judgment shall enter for the plaintiffs on that claim in the amount of $16,000, with interest, but without costs. The summary judgment on the claims against the attorneys (Count II) is affirmed, with double costs.

*So ordered.*

damages . . ."). See also Park, Real Estate Law § 896 (2d ed. 1981); Davis, Massachusetts Conveyancers' Handbook § 23 (2d ed. 1967) ("the liquidated damages clause will establish a ceiling on the damages to which the seller will be entitled . . ."); Mendler, Massachusetts Conveyancers' Handbook § 1:17 (3d ed. 1984).