Sherman, P.J.
This is a breach of contract action brought by plaintiffs Robert S. and Laurel A Wilcox (“the buyers”) to recover a $31,000.00 deposit paid by them, as prospective buyers, under an agreement for the purchase and sale of real estate owned by the defendants, Frederick and Deborah Oberg (“Obergs”). The suit was instituted in the Superior Court and remanded to the Lynn Division of the District Court Department for trial.[3] G.Lc. 231, §102C.
The Obergs maintained that at all times they were ready, willing and able to perform according to the terms of the parties’ purchase and sale agreement They filed a counterclaim alleging that the plaintiff-buyers had breached the agreement, and seeking a recovery of their lost profits and consequential damages pursuant to paragraph 21 of the agreement, which provided:
If the buyer shall fail to fulfill the buyer’s agreements herein, all deposits made hereunder by the buyer shall be retained by the seller as liquidated damages unless within 30 days after the time for the performance of this agreement or any extension hereof, the seller otherwise notifies the buyer in writing.
The parties’ purchase and sale agreement was executed on June 24, 1986 and specified a closing date of September 10,1986. The present controversy arose from an Addendum to the agreement and from paragraph K of “Rider A” attached to the original agreement The Addendum provided that the seller would construct a proper sump pump and resolve a termite problem, both to the buyers’ satisfaction, and that the buyers retained the right to cancel the agreement and recover all deposits if the seller’sperformance was not satisfactory. TheAddendum was prepared and executed primarily as a result of paragraph K of “Rider A” which provided, inter alia:
This Agreement is specifically contingent upon the sump being dried out, the termite infestation treated, and pipes being raised above ground level and the hole to be filled with concrete all to the buyer’s satisfaction, failing which the buyer may terminate this agreement and all deposits shall be *112 returned provided the buyer gives written notice to the seller or broker by Tulv 3.1986 that the buyer is not satisfied (emphasis supplied.)
The sump pump work and pest control treatment were completed prior to July 3, 1986, on which date plaintiff Robert A. Wilcox viewed the premises and indicated his satisfaction with the work. On July 17,1986, the buyers added $15,000.00 to their original deposit to complete payment of the $31,000.00 deposit required by the agreement.
On August 28,1986, however, the buyers notified the Obergs in writing that they considered the agreement terminated because of the Obergs' breach of the Addendum and Rider A, and demanded the return of their deposit. On September 9,1986, an inspection of the premises by an independent exterminating company engaged by Carlson revealed there was no evidence of termite or pest activity. The Obergs then notified the buyers that their failure to appear at the September 10,1986 closing would result in either the Obergs retention of the deposit or written notice of the Obergs’ election to proceed in accordance with paragraph 21 of the agreement. The buyers did not appear at the closing; the Obergs did appear and performed all acts necessary to establish that they were ready, willing and able to complete the transaction.
On September 26,1986, the Obergs notified the buyers in writing that:
we are retaining your deposit of $31,000.00 as partial compensation for damages we have sustained and which are continuing as a result of your action... our receipt of the $31,000.00 deposit is not accepted as a release or in full satisfaction of our claim against you for damages.
The trial court found that the failure of the plaintiff-buyers to provide timely, written notice of their dissatisfaction with the work performed pursuant to the Addendum, and their failure to accept title on September 10,1986 constituted a breach of the parties’ purchase and sale agreement, subjecting them to a loss of their deposit as partial damages. Judgment was entered for the Obergs on the plaintiffs complaint. The plaintiff-buyers did not request a report of this judgment
The trial court also entered judgment for the Obergs on their counterclaim. The court found that the Obergs ultimately sold the property to a third party for $50,500.00 less than the contract price agreed to by the buyers. The court assessed damages in the amount of $50,500.00 and then deducted the sum of $31,000.00 which was the amount of the deposit turned over to the Obergs by Carlson.
The Obergs thereafter requested a report to this Division on a charge of error in the court’s failure to award additional consequential damages to them.
The Obergs claim to have sustained damages in the amount of $112,673.00 as a result of the buyers’ breach. In extensive subsidiary findings, the trial judge divided the Obergs’ claim into the following two categories: (1) the $50,500.00 loss from the sale of their home at a price less than that agreed to by the buyers; and (2) other damages which were the proximate result of the breach. The first category encompassed a loss sustained by the Obergs despite their reasonable effort to mitigate damages after the buyers’ default, and the court properly awarded damages for such loss.
In refusing to permit recovery of the second category of damages, the trial judge apparently combined the unrelated concept of unenforceable “penalty” clauses with the concept of recovery for breach of contract, under a clause like paragraph 21, of those damages which are not only the proximate result of the breach, but also within the contemplation of the parties as determined by the doctrine of foreseeability.[4] *113 Reasonable foreseeability as to the consequences of a breach of contract may very well be imputed to the parties. Although a plaintiff may not recover unforseen elements of damage, there is no bar to recovery for such damages as naturally flow according to common understanding and are a result of the probable consequences of the breach.
A party injured by a breach is entitled to be compensated for the loss sustained in terms of the natural and probable consequences of the failure to perform the contract by the other party. Damages for breach of contract are assessed upon the principle that:
the injured party shall be placed in the same position he would have been in, if the contract had been performed, so far as the loss can be ascertained to have followed as a natural consequence and to have been within the contemplation of the parties as reasonable men as a probable result of the breach, and so far as compensation therefor in money can be computed by rational methods upon a firm basis of facts.
Associated Perfumers v. Andelman, 316 Mass. 176, 185-186 (1944), quoting from John Hetherington & Sons, Ltd. v. William Firth Co., 211 Mass. 8, 21 (1911); Boyden v. Hill, 98 Mass. 477 (1908). The measure of recovery for a prospective purchaser’s breach of contract for the purchase of real estate is generally the difference between the contract price and the market value at the time of the breach. Capaldi v. Burlwood Realty Corp., 350 Mass. 765 (1966).
However, the general rule for breach of contract recovery refers to the potential recovery of both general and special damages. General damages are those that flow according to common understanding as the natural and probable consequences of the breach and which arise naturally in the usual course of events. Special or consequential damages are those which are presumed to have been in the contemplation of the parties at the time the contract was made by reason of special circumstances known to the parties, though such damages do not flow according to common understanding as the natural, probable consequences of the breach. Boylston Housing Corp. v. O'Toole, 321 Mass. 538, 562-563 (1947). Whether the parties to this transaction contemplated specific special or consequential damages, the aggrieved sellers were still entitled to seek damages for losses reasonably expected or foreseeable which resulted from the buyers’ breach.
Ordinarily, the question of whether certain damages are reasonably foreseeable at the time of contract execution is a factual one to be determined by the trial justice. Foreseeability may be inferred if damages are the direct or natural result of the breach. Although the trial judge herein found that the following items were additional damages sustained by the Obergs as a result of the buyers’ breach, he then concluded that adding them to the amount of the Obergs’ recovery would result in “an unconscionable and oppressive penalty if allowed” irrespective of foreseeability or the concept of causality. The items of loss disallowed by the judge consisted of the following:
1. Interest on existing mortgage $ 8,102.00
2. Interest on Bridge Loan/financing charges for additional funds needed to purchase Obergs’ Maine home on September 5,1986 22,755.00
3. Real Estate Taxes 3,220.00
4. Additional home insurance required for vacant home when the Obergs moved to Maine 2,378.00
5. Electricity 553.00
6. Fuel oil 1,322.00
7. Lawn mowing and snow removal 1,959.00
8. General maintenance 301.25
9. Chimney repair 721.00
*114 10. Refrigerator repair 301.00
11. Exterior repairs 3,309.00
12. Advertising 36.75
13. Telephone calls to the broker 86.00
14. Adverse Federal & State Tax Consequences 17,850.00
■TOTAL $62,173.00
If the trial, judge’s view of the terms of the purchase and sale agreement is adopted, the seller’s remedy would be limited wrongfully. Paragraph 21 of the parties’ agreement reserved to the Obergs the right to seek damages beyond the amount of the forfeited deposit, which right they preserved through timely written notice to the buyers. Paragraph 21 is identical to the clause in Schrenko v. Regnante, 27 Mass. App. Ct. 282 (1989), wherein the Court described the clause as “one which departís] in a material way from the classic pattern. The clause, in effect, gives the sellers the right to consider damages unliquidated and to seek additional damages beyond the amount ofthe forfeited deposit.” Id. at 286. The trial judge herein was unwilling to go beyond the amount of the forfeited deposit to any significant extent He declined to make an individual examination of the above additional damages claimed by the Obergs because he considered that the inclusion of.such damages would result in an award in the nature of ¿ penalty. , .
We conclude, therefore, that this matter should be remanded to the trial judge for his examination of the second category of damages claimed by the Obergs and his determination of which, if any, of said items might presumably constitute damages recoverable not only as the proximate results of the buyers’ breach, but also as within the reasonable contemplation of the parties as determined by the doctrine of foreseeability. The court’s judgment for the Obergs on their counterclaim is yacated pending this new assessment hearing.

 The case was tried in the Lynn Division with a third-party action brought by the Obergs against Carlson Real Estate, Inc. (“Carlson”) which company had originally held the deposit and then turned it over to the Obergs upon the failure of the parties’ transaction. Carlson cross-claimed against the Obergs. Both the third-party complaint and cross-claim were dismissed by the trial judge. Neither Carlson, nor the Obergs, requested a report on such dismissal orders, and these matters are not at issue on this appeal.

 Damages must either have been within the contemplation of the defaulting party at the time he entered into a contract or be so likely to result from the breach that they can reasonably be said to have been foreseen, contemplated or expected at the time the contract was made as being a probable or natural result of any such breach. Damages are not recoverable for a loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made. RESTATEMENT (SECOND) OF CONTRACTS, §351(1) (1979).