Merrick, J.
This is an action in contract and tort to recover a $12,475.00 deposit paid by plaintiffs Mark S. and Cheryl D. Goodman (the “Goodmans”) pursuant to an agreement for the purchase and sale of a house owned by defendants Jorah and Hana Blum (the “Blums”). The Goodmans also claim damages against defendant First NH Mortgage Corp. (“FNHM”) for its alleged failure to provide a timely mortgage commitment to finance their purchase of the property.
Judgment was entered for all defendants, and the Goodmans now appeal the trial court’s findings and rulings that they were not entitled to terminate the purchase and sale agreement and recover their deposit pursuant to the mortgage contingency clause set forth therein as paragraph 29.
The reported evidence indicates that on September 25, 1990, the Goodmans entered into an agreement to purchase the Blum’s home at a price of $250,000.00, and paid a $12,475.00 deposit to bind the agreement. A closing date of October 16,1990 was set forth. Paragraph 29 of the agreement provided:
Buyer agrees to apply promptly for and to make diligent efforts to obtain a mortgage loan from an institutional lender of not more than eighty percent (80%) of the purchase price ... at prevailing rates and terms, provided, however, that the Buyer shall not be required to... apply to more than two (2) lending institutions for said mortgage. If, after making such prompt application and using diligent, efforts, the Buyer is unable to obtain a commitment [emphasis supplied] for such a loan.. on or before October 12, 1990, so notifies the Seller in writing [emphasis deleted] on or before 5:00 P.M. on October 13,1990, then and in that event the Buyer shall be entitled to a refund of all deposits paid hereunder.
Additional clauses required the Goodmáns to “use reasonable efforts to correct, cure or eliminate” any noticeor event preventing their contractual performance (Para. 36); and entitled the Blums to retain the Goodmans’ purchase depositupon the Goodmans’ failure to fulfill their purchase obligations. (Para. 22).
The Goodmans had applied to defendant FNHM for a mortgage upon the terms stated in paragraph 29 and, on September 27,1990, instructed FNHM to process their application. Defendant FNHM was given a copy of the parties’ purchase and sale agreement, and was aware of the October 12, 1990 expiration of the mortgage contingency clause.
*89 FNHM issued a mortgage commitment to the Goodmans on October 9,1990, and mailed itfrom FNHM’s main office in Hooksett, New Hampshire on October 10,1990. The trial judge found that Craig Badman (“Badman”), the FNHM agent who processed the Goodman’s application, informed Mark Goodman on October 10,1990 that the mortgage had been approved and that the Goodmans would be receiving a letter. The reported evidence indicates that Badman made two additional telephone calls to Mark Goodman on October 12, 1990, during which Badman reiterated that the commitment had been issued and mailed. Only then did Goodman request a copy of the commitment letter from Badman who was unable to comply because he had neither a copy of the letter, nor a Facsimile (FAX) Machine at the satellite office in which he was located. There is no evidence that the Goodmans made any other effort to obtain a copy of the letter on October 12,1990.
On October 13,1990, prior to his home mail delivery, Mark Goodman sent written notice to the Blums that he and his wife had been unable to obtain a mortgage commitment, and were terminating the agreement and demanding a return of then-deposit pursuant to paragraph 29. Later that same day, the Goodmans found FNHM’s mortgage commitment letter in their mail. The Goodmans thereafter refused to proceed without a reduction in the purchase price, and the parties’ transaction failed.
The trial court made extensive findings of fact and rulings of law, including the following, which form the basis of the Goodmans’ appeal: that the Goodmans’ termination of the parties’ purchase and sale agreementwas ineffective because they had in fact secured a mortgage commitment by October 12,1990 and, alternatively, had failed to demonstrate their “diligent efforts”; and that the Blums were entitled to retain the Goodmans’ deposit as liquidated damages.
1. The Goodmans contend on this appeal that Badman’s oral notice of FNHM’s issuance of a mortgage commitment was legally unenforceable[3] and thus insufficient under paragraph 29, and that their failure to receive a written mortgage commitment on or before October 12,1990 entitled them to terminate the parties’ agreement and recover their deposit.
There is no merit to the only argument advanced by the Goodmans for which they offer any legal authority; namely, that an oral mortgage commitment is unenforceable under the Statute of Frauds, G.L.c. 259, § 1. While G.L.c. 259, § 1 applies to the mortgage loan itself, the conditions of which need not be performed within one year, the Statute does not govern a promise to enter into such financing agreement.
The Goodmans’ remaining arguments do not require comprehensive consideration. First, their brief to this Division is almost devoid of supporting case citations, statutory references or other legal authority and thus does not rise to the level of appellate argument. McDonald v. Consol. Rail Corp., 399 Mass. 25, 33 n.9 (1987); Larson v. Larson, 30 Mass. App. Ct. 418, 428 (1991); Weinstein v. Steigman, 1983 Mass. App. Div. 288, 290 and cases cited.
Second, no genuine or material issue arose in this case as to the legal adequacy or enforceability of an oral mortgage commitment. The undisputed evidence before the trial court and this Division established unequivocally that FNHM approved the Goodmans’ application and issued a mortgage commitment to them on October 9, 1990, that such commitment was in writing, and that the Goodmans were so informed prior to October 12,1990. Such evidence was determinative of the Goodmans’ rights under paragraph 29.
The parties’ purchase and sale agreement must be construed as a “rational *90 business instrument. " Lembo v. Waters, 1 Mass. App. Ct. 227, 231 (1973). Its mortgage contingency clause was clearly for the Goodmans’ benefit to relieve them of their contractual obligations in the event of their inability to secure the financing prerequisite to their purchase of the Blums’ realty. Bossi v. Whalen, 19 Mass. App. Ct. 966, 967 (1985). The only “event” or condition which could trigger the relief afforded by such clause was the Goodmans’ actual failure, despite the use of diligent efforts, to secure the financing anticipated by the parties.[4] See deFreitas v. Cote, 342 Mass. 474, 477 (1961). Given the undisputed evidence of FNHM’s October 9, 1990 written mortgage commitment, the Goodmans’ were unable to satisfy their burden, Stabile v. McCarthy, 336 Mass. 399, 404 (1957), of proving that the condition of their right to terminate had in fact occurred.
There was no error, therefore, in the trial court’s findings and rulings that the Goodmans had an actual mortgage commitment as of October 12, 1990 which precluded their proper termination of the parties’ purchase and sale agreement pursuantlo its mortgage contingency clause. Any contrary finding, thatthe Goodmans could terminate the parties’ contract despite the approval of their mortgage application, would result in a construction of paragraph 29 in conflict with “justice and common sense” and the paramount intent of the parties in contracting for a real estate sales transaction. Shapiro v. Grinspoon, 27 Mass. App. Ct. 596, 600-601 (1989).
2. Even assuming arguendo that the parties’ use of the term “commitment” in paragraph 29 denoted a written document,[5] the Goodmans have failed to sustain their burden of proving that “after.. using diligent efforts, [they were] unable to obtain” such document. The record is devoid of any evidence that the Goodmans engaged in any “activity reasonably calculated to obtain [the commitment] ... by action or expenditure not disproportionate in the circumstances.” Stabile v. McCarthy, supra at 404. The Goodmans did not endeavor to secure, in person or by FAX, a copy of the commitment letter from FNHM’s main office. They did not even contact the Blums to inform them that the commitment had been mailed but not yet received, or attempt in anyway to negotiate an extension of the mortgage contingency deadline.[6] In short, the Goodmans utterly failed to satisfy their burden of demonstrating that they were "unable to obtain” the mortgage commitment “after using diligent efforts” as required by para. 29.3. The Goodmans fare no better with their assertion, unsupported by legal authority, of error in the court’s ruling that the Blums were entitled to retain the Goodmans’ deposit as liquidated damages.
It is established that a liquidated damages provision will be enforced
*91 [w]here actual damages are difficult to ascertain and where the sum agreed upon by the parties at the time of the execution of the contract represents a reasonable estimate of the actual damages...
A-Z Servicenter, Inc. v. Segall, 334 Mass. 672, 675 (1956). Both conditions were satisfied herein. “The option of the seller to retain the buyer’s deposit as liquidated damages. . .is. . .the common practice in Massachusetts conveyancing,” Lynch v. Andrew, supra at 627, for the very reason that a seller’s potential losses upon a buyer’s default are not easily quantified. Second, as the deposit in this case represented approximately 4.9% of the total purchase price, the amount of the liquidated damages constituted a moderate and acceptable estimate of the Blums’ potential losses. Schrenko v. Regnante, 27 Mass. App. Ct. 282, 284 (1989).
Upon the court’s determination that a liquidated damages provision is both appropriate and reasonable in amount, the provision will be enforced without regard to the actual damages sustained by the seller, Shapiro v. Grinspoon, supra at 605, and the buyer is not entitled to claim that the seller’s actual damages were less than the deposit amount of the liquidated damages awarded. Schrenko v. Regnante, supra at 285. The Goodmans have, in any event, failed to advance any evidence binding on the trial court which established that the amount of the liquidated damages was so excessive that it constituted a penalty. Warner v. Wilkey, 2 Mass. App. Ct. 798, 799 (1974). The reported evidence instead supports the trial court’s determination that the Blums were delayed two and one-half months in selling their home to a third party, received $6,000.00less than the Goodmans’ purchase price and incurred an obligation to pay a broker’s fee on the third party’s later sale of the real estate.
4. By far the weakest arguments advanced by the Goodmans are those presented in opposition to the trial court’s allowance of FNHM’s Dist./Mun. Cts. R. Civ. R, Rule 41(b)(2) motion for involuntary dismissal. The report is devoid of any credible evidence to support the Goodmans conjectural, conclusory allegations that FNHM tortiously interfered with their purchase transaction, negligently handled their mortgage application, or pursued conflicting interests to the Goodmans’financial detriment. There was no error.
5. Accordingly, the trial court’s judgment for the defendants is hereby affirmed. There being no prejudicial error, the report is dismissed.
So ordered.

 But cf. Coolidge Bank & Trust Co. v. First Ipswich Co., 9 Mass. App. Ct. 369, 371 (1980),(al-legations of a lender’s refusal to honor oral loan commitment held sufficient for Rule 12 (b) (6) purposes to constitute a cause of action for breach of contract), further rev'd 11 Mass. App. Ct. 923 (1981). See also cases cited in Marine Midland Bank v. Herriott, 10 Mass. App. Ct. 743, 745 (1980) for proposition that detrimental reliance on a bank’s promise to make a loan may justify recovery on estoppel grounds.

 We note that the Goodmans have failed to advance any evidence suggesting that FNHM’s financing terms were in any sense unacceptable. The evidence indicates that the Goodmans had applied for a mortgage on the general terms set forth in para. 29 and that Badman informed them that their application had been approved. A “financing condition clause presupposes that the buyers will accept commercially reasonable terms.” Lynch v. Andrew, 20 Mass. App. Ct. 623, 626 (1985).

 See Springfield Y Trust v. Executive Dir. of Mass. Housing Fin. Agency, 369 Mass. 709, 714 (1976); Charing Cross Corp. v. Comfed Mortg. Co., 25 Mass. App. Ct. 924, 926 (1987); Black’s Law Dictionary 912 (rev. 5th ed. 1979). Compare mortgage contingency clause language in the purchase and sale agreement standard forms of the Massachusetts Conveyancers Association (para. 2.23, requiring “written” commitment) and the Greater Boston Real Estate Board (para 26, requiring “commitment”) as set forth in PARK, REAL ESTATE LAW §§ 884, 884.1 (1991 supp.).

 The court’s “ruling” that the Goodmans’ failure to seek an extension of para 29 “further establishes that the plaintiffs did not use ‘diligent efforts’” reflected a proper, factual consideration of the totality of the circumstances herein, ratherthan amisinterpretation of the Goodmans’ contractual obligations. There was no reversible error.
The court’s additional ruling that the Goodmans’ failure to apply to more than one financial institution per se constituted a lack of diligent effort was harmless error. The court expressly indicated that such ruling was an alternative basis for the court’s ultimate finding which was properly predicated on the actual issuance of a mortgage commitment by FNHM.