Greco, J.
This is an action by prospective purchasers Richard B. and Phyllis Kula-kowski (“the Kulakowskis”) to recover a real estate deposit following their termination of the parties’ purchase and sale agreement because of an inability to obtain mortgage financing. The defendant-seller, William H. Leavitt (“Leavitt”), alleged that the Kula-kowskis’ failure to comply with the terms of the mortgage contingency clause precluded their proper termination of the agreement, and counterclaimed for consequential damages in excess of the liquidated amount of the deposit. After trial, the court found that the Kulakowskis had breached the agreement, but that Leavitt could neither recover additional damages, nor retain the deposit. Both parties appealed pursuant to Dist./Mun. Cts. R. A. D. A., Rule 8A.
The record indicates, and the trial judge so found, that in December, 1993, the Kula-kowskis submitted a “Contract to Purchase” a Peabody condominium owned by Leavitt for a price of $85,000.00. Leavitt accepted the Kulakowskis’ offer, the parties executed a written purchase and sale agreement, and the Kulakowskis paid a deposit of $4,250.00. Paragraph 27 of the agreement was a financing contingency clause which released the Kulakowskis from their obligation to purchase and entitled them to a return of their deposit if they were unable, after “diligent efforts” to obtain a commitment “for a conventional bank or other institutional mortgage of $80,750.00 at prevailing rates, *160 terms and conditions.” Paragraph 27 further provided:
In no event will the Buyer be deemed to have used diligent efforts to obtain such commitment unless the Buyer submits a complete mortgage loan application conforming to the foregoing provisions on or before December 29, 1993.
Leavitt’s right to retain the deposit upon the Kulakowskis’ breach was set forth in the following liquidated damages clause:
22. If the Buyer shall fail to fulfill the Buyer’s agreements herein, all deposits made hereunder by the Buyer shall be retained by the Seller as liquidated damages unless within thirty days after the time for performance of this agreement or any extension hereof, the Seller otherwise notifies the Buyer in writing.
The Kulakowskis spoke to a neighbor who was a “loan originator” for First NH Mortgage. The neighbor informed them that lending institutions would view the condominium as investment property, and would thus require a down payment of twenty-five (25%) to thirty (30%) percent instead of the five (5%) percent deposit envisioned by the Kulakowskis as their sole down payment.[2] The Kulakowskis then spoke to a “representative” of the bank which held both the mortgage and a home equity loan note on their residence. They were informed that that particular bank was not issuing loans on condominiums. Based on such limited information and without applying to any lender for an $80,750.00 loan on the condominium, the Kulakowskis applied to their bank for a $100,000.00 loan and a $25,000.00 equity subordination with their residence as collateral. That mortgage application was denied on January 14,1994.
The Kulakowskis thereafter informed Leavitt that they were unable to obtain financing and requested that he return their deposit. Leavitt refused to do so and issued a timely notice to the Kulakowskis pursuant to paragraph 22 of the parties’ agreement that he was seeking consequential damages in excess of the deposit.
The trial judge made voluntary, comprehensive written findings of fact and rulings of law,[3] and entered judgment for the Kulakowskis’ in the amount of their deposit.
1. The Kulakowskis’ appeal is predicated on a charge of error in the trial court’s determination that they failed to comply with the requirements of the mortgage contingency clause. Whether the Kulakowskis acted “diligently” to obtain the requisite financing contemplated by paragraph 27 was a “factual question, the determination of which is entitled to the customary appellate deference.” Lynch v. Andrew, 20 Mass. App. Ct. 623, 625 (1985). We conclude that there was no error in the court’s findings on this issue which were amply supported by the evidence.
A mortgage contingency clause permits a buyer to avoid his contractual obligation to purchase and to escape liability therefor upon the “happening of a condition precedent,” Stabile v. McCarthy, 336 Mass. 399, 402-403 (1957); namely, the buyer’s failure, after sufficient, appropriate effort, to obtain financing “in a stated amount and on stated terms” specified in the contingency clause. Tremouliaris v. Pina, 23 Mass. App. Ct. 722, *161 726 (1987). Paragraph 27 clearly required the Kulakowskis to use “diligent efforts” to obtain financing in the amount of $80,750.00, and to submit at least one completed application for a condominium mortgage in that amount. They never filed even a single application for an $80,750.00 mortgage, or for any financing on the condominium itself.[4] Moreover, as the trial court properly ruled, the Kulakowskis’ mere conversations with a neighbor and with a single bank representative did not require a finding that the actual submission of the mortgage loan application contemplated by paragraph 27 would have been an “empty gesture.” Stabile v. McCarthy, supra at 406; See also Sechrest v. Safiol, 383 Mass. 568, 572 (1981).
There is no merit to the Kulakowskis’ argument that their single application for a $100,000.00 mortgage on their own residence satisfied the terms of paragraph 27. Because a financing contingency clause is for the buyer’s benefit and may be waived by him, Churgin v. Hobbie, 39 Mass. App. Ct. 302, 305 (1995); Bossi v. Whalen, 19 Mass. App. Ct. 966, 967 (1985), a buyer may elect to obtain full financing in an amount and form different from that specified in the clause only if the buyer then in fact proceeds to complete his purchase obligations. “It would be of no importance” to the seller “if the buyer was still able to tender the full purchase price.” DeFreitas v. Cote, 342 Mass. 474, 477 (1961). However, the buyer may not unilaterally alter the requirements of the contingency clause and still seek to take advantage of its terms. If the buyer wishes to escape liability for failing to purchase, he must fully comply with the requirements of the financing contingency agreed to by the seller.
2. Having properly determined that the Kulakowskis breached the parties’ purchase and sale agreement and that Leavitt had issued timely notice of his intent to seek consequential damages pursuant to paragraph 22, the trial judge then mled that Leavitt was not entitled either to recover additional damages, or even to retain the deposit. Such ruling was error, and the court’s judgment must be vacated.
Paragraph 22 herein varied from the standard purchase and sale agreement liquidated damages clause which authorizes a seller to retain the deposit as his full damages upon the buyer’s breach. Identical to the liquidated damages clause in Schrenko v. Regnante, 27 Mass. App. Ct. 282 (1989), paragraph 22 herein “departed in a material way from the classic pattern ... [by giving the] seller... the right to consider the damages unliquidated and to seek additional damages beyond the amount of the forfeited deposit.” Id. at 286. As noted in Schrenko,
the ... deposit, instead of being a settlement agreed upon in advance, became, at the sellers’ option, only the minimum amount they would receive as compensation for their losses. According to the terms of the agreement, the minimum amount had to be accepted in settlement in the event of a loss in the amount of the deposit or less [emphasis supplied].
Id. at 287. The clause was construed in Schrenko as providing for an unenforceable penalty rather than liquidated damages for the reason that the sellers sold the property at a higher price to a third party after the buyer’s default. The Appeals Court concluded that in such “unusual circumstances,” it was not “equitable for the sellers, having benefited financially as a result of the buyer’s breach, to retain the deposit.” Id. at 287. In this case, however, Leavitt has not sold the property at a higher price. To the contrary, at the time of trial, he had only an agreement for a forthcoming sale at a price $11,000.00 less than that to which the Kulakowskis had agreed. Accordingly, paragraph 22 did not result in a *162 penalty herein, and was fully enforceable.[5] Leavitt was thus entitled, at a minimum, to retain the $4,250.00 deposit, and judgment should have been entered for Leavitt in at least this amount on his counterclaim.
The trial judge denied Leavitt’s claim for actual damages on the grounds that Leavitt “submitted no evidence as to the fair market value [of the property] on the date of the breach.” Traditionally, the measure of damages as a result of the prospective buyer’s breach of a contract for the sale of land has been the difference between the purchase and sale agreement price and the fair market value on the date of the breach. Capaldi v. Burlwood Realty Corp., 350 Mass. 765 (1966); American Mech. Corp. v. Union Machine Co. of Lynn, Inc., 21 Mass. App. Ct. 97, 100 (1985). We note that, apart from any issue as to its probative weight, there was some evidence of fair market value in this case. The price negotiated by Leavitt for the prospective sale of the property to a third party some eighteen months after the breach was some evidence of market value on the earlier date. See, e.g. American Mech. Corp., supra at 100 n.2 (evidence of foreclosure sale price seven months after breach was admissible on the issue of market value at the time of the breach); Rokowsky v. Gordon, 531 F. Supp. 435, 439 (D. Mass. 1982) (sale in 1975 found to be some measure of value of property at time of 1974 breach).
In any event, a seller’s failure to submit evidence of fair market value on the date of the breach would not preclude recovery of his actual losses in every case. The reason is that the traditional measure of damages stated above is neither the exclusive method, nor a “rigid rule,” for calculating and assessing damages. Foster v. Bartolomeo, 31 Mass. App. Ct. 592, 595-596 (1991). Where the “usual rule produces an inadequate remedy” because a seller’s actual losses exceed the amount yielded by the traditional formula, a court may properly consider the “actual losses sustained as a result of a breach when the losses are reasonably foreseeable or within the contemplation of the parties.” American Mech. Corp., supra at 102. Thus as a seller may recover actual damages and as the traditional rule is merely one formulation of the general principles of contract recovery, it was unnecessary for Leavitt to first establish what the traditional rule would have yielded before seeking his out-of-pocket expenses. If the total of such actual losses proves less than what the traditional formula might have yielded, the Kulakowskis would certainly have no cause to complain.
Accordingly, this case must be returned to the trial court on the question of damages. Leavitt will be entitled to one of the following, whichever is greater: (1) liquidated damages in the amount of the $4,250.00 deposit; (2) the difference between the purchase and sale agreement price and the fair market value of the property on the date of the Kula-kowskis’ breach under the traditional formula; qt (3) his actual out-of-pocket losses,[6] which would not include the amount yielded by the traditional formula.
The trial court’s judgment for the Kulakowskis is vacated. Judgment is to be entered for defendant Leavitt on the Kulakowskis’ complaint. Following an evidentiary hearing for the assessment of damages, judgment for the amount assessed is to be entered for Leavitt on his counterclaim.

 The Kulakowskis were purchasing the condominium in their name as a home for Richard Kulakowski’s parents. Thus as the unit would not have been “owner-occupied,” it would have been classified as investment property for financing purposes.

 As both parties failed to file Mass. R. Civ. R, Rule 64A requests for rulings of law, they effectively forfeited any right to appellate review by this Division. See Arrow Paper Corp. v. Boylston Foods, Inc., 1 Mass. App. Ct. 808, 809 (1973); U. B. Vehicle Leasing, Inc. v. Bender, 1994 Mass. App. Div. 101, 102. The trial judge’s election to issue written findings and rulings, however, revived the parties’ moribund appellate rights and provided a legal basis for the cross-appeals herein. Falmouth Nat’l Bank v. Blackmon, 1993 Mass. App. Div. 181, 182: Ledgemere Country Condo. Assoc., Inc. v. Steckloff, 1991 Mass. App. Div. 25, 26.

 The trial judge correctly ruled that no reasonable construction of the parties’ agreement supports the Kulakowskis’ contention that paragraph 27 did not require an application for a mortgage on the condominium as opposed to a loan secured by other real estate. Paragraph 27 states: “In order to help finance the acquisition of said premises, the Buyer shall apply for a conventional... mortgage ...” The Kulakowskis’ initial “Contract to Purchase” stated that it was subject to their obtaining a “conventional first mortgage commitment of $80,750.00...”

 There was nothing unconscionably excessive or grossly disproportionate about the amount of the $4,250.00 deposit per se as liquidated damages. Given the various actual expenses claimed by Leavitt after the failed sale, liquidated damages in the amount of five (5%) percent of the purchase price was a reasonable, if not conservative, forecast of Leavitt’s losses. Compare Goodman v. Blum, 1993 Mass. App. Div. 89, 91 (liquidated damages in the amount of 4.9% of total purchase price was “a moderate and acceptable estimate of the [seller’s] potential losses.”

 The trial judge listed in his findings the various expense items alleged as losses by Leavitt. With respect to Leavitt’s mortgage payments, only the portion representing interest and carrying costs, rather than principal, may be considered. While the $11,000.00 difference between the price to be paid by the Kulakowskis and the prospective third party purchaser may factor in an assessment of damages under the traditional rule, American Mech. Corp., supra at 103, it cannot be included as an actual, out-of-pocket expense under the third method.