Merrick, J.
This is an action in contract to recover damages for breach of a covenant not to compete. Judgment was entered for the plaintiff in the amount of $3,500.00. The plaintiff thereafter appealed pursuant to Dist./Mun. Cts. RA.D A., Rule 8A on the grounds that the damages assessed were inadequate.
The plaintiff, The Lenco Pro, Inc. (“Lenco”), was engaged in the business of providing computer services personnel to clients, one of whom was the Palm Beach County School Board in West Palm Beach, Florida (the “School Board”). In April, 1994, Lenco entered into a written contract with defendant JNG Consultants, Inc. (“JNG”) under which JNG would provide computer consultant services to Lenco’s client, the School Board. The written contract, by its terms, expired on December 31,1994. Paragraph 20 of the contract stated:
Neither [JNG], nor any of its employees, agents [sic] will accept contractual employment, or market services, directly or indirectly at the [School Board] for a period of six months following termination of services provided pursuant to this agreement.
JNG’s consulting services to the School Board were provided in their entirety by JNG’s president, defendant Jonathan N. Guerin (“Guerin”).[2] Lenco paid JNG $50.00 per hour for Guerin’s services, and in turn billed the School Board $61.00 for Guerin’s services, thereby netting a per hour profit of $11.00. On November 29, 1994, the School Board notified Lenco that it was terminating its agreement with *11 Lenco as of January 1,1995. Prior to December 31,1994, Guerin arranged with the School Board for JNG to provide directly the same consultant services which JNG had been furnishing under its contract with Lenco. JNG continued to provide those services to the School Board during the six months following the expiration of its contract with Lenco and up to the time of trial. JNG charged the School Board only $55.00 per hour for Guerin’s services. While Guerin continued to provide the bulk of the services, JNG also placed other consultants at the School Board during the time in question.
While the trial judge made no findings of fact, the $3,500.00 in damages she assessed suggests that the judge calculated Lenco’s lost profits on the basis of Guerin’s services alone, at JNG’s $55.00 hourly rate, for the six months following the termination of Lenco’s contract with the School Board. Lenco’s principal contention on this appeal is that the damages were inadequate.
1. The general rule of damages for breach of contract is that “the injured party shall be placed in the same position he would have been in had the contract been performed ...” Mailman’s Steam Carpet Cleaning Corp. v. Lizotte, 415 Mass. 865, 869 (1993). See also, Wilcox v. Oberg, 1990 Mass. App. Div. 111, 113: Kolokythas v. Vautour, 1990 Mass. App. Div. 14. “[T]he task of quantifying the consequences of violating a noncompetition clause is a particularly difficult and elusive one.” Kroeger v. Stop & Shop Cos., Inc., 13 Mass. App. Ct. 310, 322 (1982). The damages in such actions are generally calculated as income or profits lost to the former employer. Frank D. Wayne Associates, Inc. v. Lussier, 16 Mass. App. Ct. 986, 988 (1983); My Bread Baking Co. v. Jesi, 350 Mass. 282, 285-286 (1966); Lufkin’s Real Estate, Inc. v. Aseph, 349 Mass. 343, 346 (1965); Snelling & Snelling of Mass., Inc. v. Wall, 345 Mass. 634, 635 (1963).[3] We find no case where damages in contract for breach of a covenant not to compete have been measured in any other way.
The present action is in contract only. It has not been suggested here that JNG induced the School Board to terminate its contract with Lenco. Cases providing for an alternate remedy, in the nature of disgorgement of profits or unjust enrichment, are inapposite as they apply only to “business torts” such as misappropriation of trade secrets, unfair competition (passing off), impairment of good will, and trade name, trademark, and copyright infringement. Jet Spray Cooler, Inc. v. Crampton, 377 Mass. 159, 169-171 (1979); National Merchandising Corp. v. Leyden, 370 Mass. 425, 431-432 (1976).
Both parties have struggled with the quantum of proof required for the sometimes difficult task of assessing the lost profits flowing from breach of a covenant not to compete. “As in other cases where lost profits have to be valued, [citation omitted] mathematical accuracy of proof is not required, and estimates are in order.” Frank D. Wayne Associates, Inc. v. Lussier supra at 988. On the question of determining lost profits from an employee’s breach of contract, the Supreme Judicial Court has observed:
[A]lthough proof of the precise amount of loss is impossible, the defendants should not be permitted to escape the consequences of their wrongful conduct that caused harm to the plaintiffs if some reasonable damages calculation can be made.
*12 Augat, Inc. v. Aegis, Inc., 417 Mass. 484, 491 (1994).
Depending upon the inferences drawn and findings made about Lenco’s prospects for continued and/or expanded business with the School Board, the trial judge would have been justified, on the record before us, in calculating Lenco’s lost profits based upon all the profits from all consultants placed by JNG, either during the first six months or to date, or upon the profits from Guerin’s services only, again either during the first six months or to date. Whether Lenco’s hourly rate or JNG’s rate for Guerin’s services should have been used to assess lost profits depended upon the trial judge's determination of whether the School Board would have been willing to pay the higher rate. The issues are preeminently ones of fact.
Evidence that the School Board paid JNG only $55.00 per hour for Guerin’s services obviously permitted a finding by the trial court that the School Board would have been willing to pay Lenco the same hourly rate. It is apparent that the trial court utilized this hourly rate in determining Lenco’s lost profits for Guerin’s total hours of service for the six months following the expiration of its contract.[4] Nothing in the record suggests that, in so doing, the court applied an erroneous standard.
2. Lenco claims to be aggrieved by the trial judge’s inaction upon its “Requests for Findings of Fact and Conclusions of Law” filed at the close of the evidence. There was no error.
It is axiomatic that a judge in a district court non-jury proceeding is not required to make written findings of fact, Mass. R. Civ. R, Rule 52(c), or to respond to a party’s requests for findings of fact. Huikari v. Eastman, 362 Mass. 867 (1972); Macone Bros., Inc. v. Strauss, 1997 Mass. App. Div. 95, 96. Further, the judge is obligated to make rulings of law only in response to proper requests for the same. Stella v. Curtis, 348 Mass. 458, 461 (1965); Adamaitis v. Metropolitan Life Ins. Co., 295 Mass. 215, 219 (1936). If the judge takes no action upon proper requests for rulings of law, the requests are generally deemed denied. Mass. R. Civ. R, Rule 64A(c). See also Hogan v. Coleman, 326 Mass. 770, 772 (1951); Manchester Supply Co. v. Appell, 1990 Mass. App. Div. 204, 20[5]. No action is required, however, upon requests addressed to issues of law upon which the requesting party has prevailed,[5] or upon any request which fails to comply with the requirements of Mass. R. Civ. R, Rule 64A(c).
The trial court was not obligated to act upon Lenco’s requests simply because some of them were captioned requests for “Conclusions of Law.” “The character of a pleading or other paper filed in a cause is to be determined from its essential substance and not from its descriptive title or name.” Spadea v. Stewart, 350 Mass. 218, 222 (1966) and cases cited. ‘The mere circumstance that [a request for a finding of fact] was described with others under a general heading ‘requests for rulings’ does not transform it into a request for a ruling of law. Its nature must be determined from its essentials and not from its name.” Castano v. Leone, 278 Mass. 429, 431 (1932). See also Moniz v. Kingsberry Home Inspec. & Testing Serv., Inc., 1993 Mass. App. Div. 19, 20.
*13 Not a single one of Lenco’s requests constituted a proper request for ruling of law as defined by Mass. R. Civ. R, Rule 64A(a):
Each request shall concisely present a single issue of law and shall be sequentially numbered. Requests shall not be redundant or unreasonable in number. With the exception of requests addressed to the sufficiency of the evidence, each request shall also concisely state the relevant principle of law and should be supported by appropriate legal citation.
Many of Lenco’s requests were nothing but lengthy findings of fact.[6] Even those requests which at least addressed legal issues improperly espoused multiple or repetitious arguments of law.[7] See Dowse, Inc. v. Brockunier, 1992 Mass. App. Div. 44, 45. Other requests, denominated as requests for conclusions of law, presented mixed questions of fact and law.[8] See Liberatore v. Framingham, 315 Mass. 538, 543-544 (1944). As none of Lenco’s proposed conclusions constituted a proper request for ruling of law conforming to the requirements of Rule 64A, there was no error in the trial court’s inaction upon the same. See Mass. R. Civ. R, Rule 64A(c).
There being no error, the trial court’s judgment is affirmed. The plaintiffs appeal is dismissed.
So ordered.

 After trial, the court entered a finding in favor of Guerin. Neither the plaintiff, nor JNG, has appealed that finding.

 The earlier cases, Lufkin’s and Snelling, appear to suggest that evidence of the former employee’s earnings from the employer’s former customers is not, by itself, sufficient evidence to prove the employer’s lost profits. The later cases, Wayne and My Bread, appear to relax this standard on the theory that damages in these cases are usually difficult to prove. As the defendant in this case has not appealed, we do not consider the issue of the legal sufficiency of the evidence.

 The School Board’s payment of $55.00 per hour for Guerin’s services would have represented a profit to Lenco of $5.00 per hour over the $50.00 that Lenco' was paying Guerin. During the six month period in question, Guerin personally billed the School Board for 700 hours. Lenco’s $5.00 per hour profit at the $55.00 rate on those hours would have been $3,500.00, which was exactly the amount of lost profit damages awarded by the trial judge.

 Thus any request by Lenco pertaining exclusively to the issue of JNG’s liability for breach of contract, as opposed to the damages flowing from such breach, required no judicial response.

 For example, proposed “Conclusion of Law” no. 2 stated: “In the instant case, Guerin, having dealt directly with Lenco’s customer, the School Board, from April, 1994 through November, 1994, was in a powerful position to injure and appropriate the good will which Martin had established between Lenco and the School Board. The noncompetition provision agreed to by JNG was reasonably tailored and necessary to protect the legitimate interests of Lenco in continuing a long-term relation with the School Board, a relationship begun by Lenco in placing Barnella with the School Board before placing Guerin and JNG.” See also nos. 3,12,13,14,15, 17 and 20.

 Requested “Conclusion of Law” no. 1, for example, stated: “It is axiomatic that trade secrets, confidential date and good will are protectible business interests, [citation omitted] Good will generally applies to customer relationships and is described as the benefit derived from a reputation for promptness, fidelity' and integrity with customers, [citation omitted] It has long been recognized that persons dealing directly with customers have the capacity to injure the good will of their former employers, [citation omitted] The courts have recognized the propriety of reasonable post-employment restraints as a means to protect customer good will.” See also nos. 5,6,7,8,9,10,11 and 18.

 For example, proposed “Conclusion of Law” no. 4 stated: “Accordingly, the Contract Agreement entered into between Lenco and JNG is enforceable and JNG’s continuation of services beyond January 1,1995 constituted a breach of that agreement.” See also nos. 16,19,21 and 22.