Guy TARDANICO, et al., Plaintiffs,

v.

Thomas M. MURPHY, et al., Defendants.

No. CIV. 94–1529(DRD).

United States District Court,
D. Puerto Rico.

Sept. 30, 1997.

Roberto Sueiro–De–Valle, Guaynabo, PR, for Plaintiffs.

Edward M. Borges, O'Neill & Borges, American Intern. Plaza, Hato Rey, PR, for Defendants.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Plaintiffs filed this contract action, claiming the annulment of the contract due to Defendants' deceit. In the alternative, Plaintiffs request the contract's resolution due to Defendants, breach, as well as a damages award. Defendants denied Plaintiffs' claims and counterclaimed for expenses incurred after Plaintiffs abandoned the property object of this case.

Pending before the court is Defendants' Motion for Summary Judgment requesting (1) the dismissal of Plaintiffs' claims and (2) judgment in Defendants' favor as to the counterclaim. (Docket No. 26.) Plaintiffs filed their opposition. (Docket No. 29.) After deciphering Plaintiffs' submitted document, the court concludes that said opposition also presents a cross-motion for summary judgment in Plaintiffs' favor.[1] For the reasons discussed below, the court grants in part and denies in part Defendants' motion and grants in part and denies in part Plaintiffs' motion. At the end, all of Plaintiffs' claims are dismissed with prejudice, Defendants' counterclaim as to renovation expenses is dismissed with prejudice and Defendants' counterclaim as to utility bills is granted.

---

1. Plaintiffs specifically request in their opposition that the court "enter Judgment in favor of Plain- tiffs for the causes of action presented before thee."

## I. BACKGROUND

Pursuant to the standard for summary judgment, the following are the facts not in controversy.

On April 30, 1992, Plaintiffs—purchasers—and Defendants—sellers—entered into a contract for the sale of a property in the island municipality of Vieques. During negotiations, Plaintiffs, their attorneys and an aid knowledgeable in these matters which they retained, all reviewed all the documents related to the sale, including all administrative permits which Defendants held.

The property's selling price was $850,000. To comply with the contract, Plaintiffs had to deliver a first payment of $50,000 at the signing and, simultaneously, Plaintiffs had "the right to the use, occupancy and control of the property," as well as "the use of all permits and licenses to operate the property." The contract did not contain a covenant that stated any particular use and operation for the property. The parties did state in the contract that Plaintiffs had the obligation to take all necessary steps to have all permits and licenses turned over to them or reissued in their names, within the fixed date in which the deed was to be released from trust.

The contract also provided that Plaintiffs were to deliver payments for $50,000 and $60,000 on September 5, 1992 and December 5, 1992, respectively. Should Plaintiffs default on these payments, Defendants would be contractually entitled to retain payments previously received as liquidated damages. Plaintiffs also signed a promissory note, wherein Plaintiffs were obligated to pay the remaining balance of $690,000 in sixty consecutive monthly payments to begin on January 5, 1993 and end on December 5, 1997. Also on January 5, 1993, the deed to the property was to be placed in a trust. On May 5, 1994, the same date when Plaintiffs were obligated to deliver the seventeenth monthly payment, the trustee was to release the deed to Plaintiffs. By this date, Plaintiffs would have made payments totaling $260,926.88.

Finally, the contract provided that Plaintiffs were responsible for all the contents, expenses and utilities relating to the property and that the contract contained the entire agreement between the parties, without any implied warranties.

At the signing, Plaintiffs delivered a $50,000 payment and Defendants produced all the administrative permits over the property in their possession. However, Defendants did not possess a use permit from the Administration for Regulations and Permits ("ARPE") for the operation of the property as a guest house.

On May 1992, Plaintiffs took possession of the property and began to operate a guesthouse and restaurant. The lack of ARPE's use permit in no way hindered Plaintiffs' operation. The government never threatened to take action. On the contrary, the Mayor of Vieques assured Plaintiffs her support of the guesthouse because the facility helped the municipality's economic development.[2]

Yet, Plaintiffs began to demand from Defendants that they obtain the ARPE use permit. Given these demands, Defendants offered to rescind the contract, but Plaintiffs refused. Instead, the parties amended the contract on September 1, 1992, agreeing to the following: "[T]he original due date of [Plaintiffs'] next payment of $50,000 due September 5 will be extended for a period of 30 days or until all agreed upon permits have been issued, whichever is longer." Both parties argue that the amendment referred to the ARPE use permit.

On July 10, 1992, pursuant to Defendants' efforts, the Construction and Notification Appeals Board had issued a resolution approving the construction and use of a guest house on the property. The resolution clearly stated that it was not in itself a permit and, thus, that further administrative steps remained in order for the final permit to be materialized.

On September 29, 1992, Defendants delivered a copy of this resolution to Plaintiffs. On October 23, 1992, Plaintiffs delivered a

---

**2.** The state government agency issued all ARPE permits. However, the law grants the municipal governments an active participation in the issu-ance of such permits. P.R. Laws Ann., tit. 23 §§ 71–72i.

payment of $25,000 and, one week later, delivered another for the same amount.

By December 24, 1992, Plaintiffs had not made any other payments. For this reason, the parties amended the contract for a second time, providing for new payment terms as to the $60,000 obligation due on December 5, 1992. This amendment required Plaintiffs to deliver two payments of $30,000 on January 5 and April 5, 1993, respectively. The first monthly payment of the remaining balance was now due on June 5, 1993 and the seventeenth payment on November 5, 1994. Further, the amendment stated: "All other conditions of the contract of sale and promissory note will still apply and the contract of sale and promissory note is reaffirmed subject to these changes only." During the negotiations of this amendment, the ARPE use permit was never at issue.[3]

On January 22, 1993, Plaintiffs had delivered a $30,000 check to Defendants, but requested that Defendants not deposit said check. In its stead, Plaintiffs delivered a $10,000 check and a $20,000 check, requesting that Defendants not deposit the second until February 10, 1993 because no funds would be available before that date. Given Plaintiffs' apparent problems in meeting the payment schedule, Defendants offered to renegotiate the terms one more time, but Plaintiffs did not accept.

On February 1, 1993, ARPE issued a guesthouse construction permit for the property, pursuant to Defendants' continued efforts.

By late June 1993, Plaintiffs had failed to make any further payments and finally defaulted on the contract, vacating the property and returning possession to Defendants. The amount which Plaintiffs had actually delivered to Defendants totaled $130,000, amount which Defendants retained under the contract's liquidated damages clause.

On August 10, 1993, approximately six weeks later, ARPE issued a guesthouse use permit for the property.

After retaking possession of the property, Defendants incurred in expenses totaling $11,534 for renovations and repairs, alleging that Plaintiffs had not properly maintained the property and had permitted its deterioration. Further, Defendants paid $3,434.25 in Plaintiffs' past due utility bills. By letter dated June 23, 1993, Plaintiffs admitted their obligation to pay for such bills.[4]

On April 20, 1994, Plaintiffs filed this action claiming that Defendants had been deceitful, at the time of perfecting the contract, regarding ARPE's use permit and, therefore, that the contract is null and void. In the alternative, Plaintiffs claim that Defendants breached the contract by not delivering the object upon which they agreed and, therefore, that the court should resolve the contract and award damages. Defendants counterclaimed for the renovation and repair costs, as well as for the utility bill payments.

## II. SUMMARY JUDGMENT STANDARD

The function of summary judgment is "to pierce the boilerplate of the pleadings and examine the parties' proof to determine whether a trial is actually necessary." *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997) (citing *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992)). A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). "To defeat a motion for summary judgment, the nonmov-

---

3. This amendment also provided that the law governing these terms would be that of the State of New York. However, none of the parties in this action has raised this issue. On the contrary, all parties have argued Puerto Rico law. Therefore, the court deems all arguments as to this issue waived and will apply Puerto Rico law in this diversity action.

4. In the letter, one of the Plaintiffs stated: "I hope we can conclude the only 3 (three) remaining outstanding financial matters encumbered by us,—specifically, Electric, Telephone and Water-bills [sic]."

ing party must demonstrate the existence of a trial worthy issue as to some material fact." *Cortés–Irizarry v. Corporación Insular*, 111 F.3d 184, 187 (1st Cir.1997). "In applying this formulation, a fact is 'material' if it potentially affects the outcome of the case", *Vega–Rodriguez*, 110 F.3d at 178, and "genuine" "if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortés–Irizarry*, 111 F.3d at 187. "Speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant in the face of a properly documented summary judgment motion. Moreover, even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996) (citations omitted).

In addition, a court is empowered to grant summary judgment in favor of the non-moving party, as long as the moving party had been on notice that all evidence had to come forward. *McGuinness v. DuBois*, 891 F.Supp. 25, 33 (D.Mass.1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). If a party comes forward with evidence in its own motion for summary judgment, the moving party has entered the fray and has left itself open to the appropriate entry of summary judgment against it. *Id.*

### III. ANALYSIS

### A. FIRST CLAIM: CONTRACT IS NULL AND VOID

Plaintiffs allege that their consent was defective due to Defendants' deceit regarding ARPE's use permit. Puerto Rico law[5] provides that the parties' consent is a requirement for a contract's existence, but that, if consent was given pursuant to the other party's deceit, consent shall be void. P.R. Laws Ann., tit. 31 §§ 3375, 3391, 3404. "There is deceit when by words or insidious machinations on the part of one of the contracting parties the other is induced to execute a contract which without them he would not have made." P.R. Laws Ann., tit. 31 § 3408. However, for a party's deceit to cause the nullity of a contract, such deceit must be serious. P.R. Laws Ann., tit. 31 § 3409.

In this case, Plaintiffs allege that they would not have entered into the contract on April 10, 1992 had it not been for Defendants' insidious machinations regarding the ARPE use permit. However, Plaintiffs omitted the December 24, 1992 amendment, in which the parties "reaffirmed" the contract in its entirety, with full knowledge of all issues as to the ARPE use permit at this time.

■ A contract is voidable where a party is the victim of deceit when contracting. P.R. Laws Ann., tit. 31 § 3511; *Caridev v. Stubbe*, (citing *Zayas v. Orraca*, 80 P.R.R. 327, 339 (1958)). However, a nullity action is extinguished at the moment the parties to the contract validly confirm it. P.R. Laws Ann., tit. 31 § 3520. "The confirmation can be made either expressly or in an implied manner. It shall be understood that there is an implied confirmation when, being aware of the cause of the nullity, and such cause having ceased to exist, the person who may have a right to invoke it should execute an act which necessarily implied his wish to renounce such a right." P.R. Laws Ann., tit. 31 § 3522. Hence, confirmation purges the contract from all defects which it may have contained at the moment of its execution. As the Puerto Rico Supreme Court explained in *Madera v. Metropolitan Construction Corp.*, 95 P.R.R. 625, confirmation "purifies the act or contract of any vices it originally had so that it can produce all the legal effects which are attributable thereto; it is a waiver to invoke the cause of nullity which affects it." *Id.* at 633.

---

5. The court applies state substantive law in this diversity jurisdiction contract claim. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Cortés–Irizarry v. Corporación Insular*, 111 F.3d 184, 189 (1st Cir. 1997).

■ In the case at hand, even assuming that the contract was originally voidable, Plaintiffs expressly waived their action of annulment when they agreed to the December 24, 1992 amendment, with which the parties cured the alleged cause of annulment—the alleged deceit. Therefore, the court holds that the contract is not null and void.

## B. SECOND CLAIM: BREACH OF CONTRACT

In the alternative, Plaintiffs request damages, alleging that Defendants breached the contract, pursuant to the following statute:

The right to rescind the obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him.

The person prejudiced may choose between exacting the fulfilment of the obligation or its recission, with indemnity for damages and payment of interest in either case.

P.R. Laws Ann., tit. 31 § 3052.

Plaintiffs argue that Defendants did not comply with their contractual obligation of delivering ARPE's use permit along with the property. Defendants counter, first, by questioning the existence of this obligation and, second, by alleging that they complied nonetheless.

■ The September 1, 1992 amendment is applicable to this issue since it modified the parties' obligations regarding the permit. *See Nieves Domenech v. Dymax Corp.*, 952 F.Supp. 57, 61 (D.P.R.1996) (explaining that Puerto Rico law recognizes modificatory novations, which simply modify original agreements). As Defendants have admitted, this amendment did impose upon them the obligation to obtain ARPE's use permit for the guest house, but did not establish a time limitation for obtaining the same. A reading of the rest of the contract, then, clearly demonstrates that Plaintiffs had the obligation to take all necessary steps to have all permits turned over to them or reissued in their names by the time the deed is released from trust. The earliest date when this event could have taken place was on November 5,

1994, the agreed upon date for the seventeenth monthly payment pursuant to the promissory note. The parties never reached this stage, though. Therefore, Defendants' obligation to turn over ARPE's use permit was never perfected.

■ Notwithstanding, Defendants did obtain ARPE's use permit within a reasonable time period. Both parties knew of the permit's nonexistence when they signed the September 1, 1992 amendment, at which stage Defendants diligently began the administrative steps required to obtain it. Defendants had already contracted the services of an engineer. Defendants obtained the Appeals Board resolution. On February 1, 1993, Defendants obtained a guest house construction permit from ARPE. And, finally, Defendants obtained ARPE's use permit on August 2, 1993. Defendants went through all the steps which ARPE's highly bureaucratic process requires, so it would be unreasonable to conclude that Defendants were not diligent. In sum, Defendants obtained the permit within a reasonable period considering the nature of the endeavor, as well as within the contract's stipulation, specially since they were not obligated to turn over the permit until the deed was to be released from trust.

■ Furthermore, even if the obligation to obtain the permit within a fixed period existed, its breach would not have caused the contract's resolution. Not every failure to comply with a mutual obligation will have the effect to terminate a contract, but the unmet obligation must have been a principal one that constituted the motive for which the party entered into the contract. *Ramírez Anglada v. Club Cala de Palmas*, 123 P.R. Dec. 339, 347–48, 1989 WL 607322 (1989). ARPE's use permit was not an "essential" object of the contract, but an "accessory" one. *See Id.* Therefore, even if Defendants had not met this obligation, the breach would not have caused the contract's resolution. Plaintiffs would only have had a claim for damages, but not one for the resolution of the contract. *See Id.* However, Plaintiffs did not even suffer any damages caused by the temporary lack of the permit. On the contrary, they enjoyed the use of the property as a guest house without interruption and

without any threat of interruption. Therefore, Plaintiffs lack a claim for damages on these alternative grounds.

█ Further, Plaintiffs allege that Defendants breached the contract because they misrepresented that the Appeals Board resolution was, in fact, ARPE's use permit, in order to extract the $50,000 payment.[6] Plaintiffs base this claim on Puerto Rico law: "Those who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby." P.R. Laws Ann., tit. 31 § 3018.

Nevertheless, Defendants enclosed a copy of the Appeals Board resolution with the letter where the alleged misrepresentations appeared. And, again, the resolution clearly stated that it was not a permit, but that steps remained to be complied with in the permit's application process.

The court finds, then, that Defendants did not deceive Plaintiffs, but that Plaintiffs must have accepted the resolution as proof that Defendants were, in good faith, taking the necessary steps to have ARPE issue the use permit. Therefore, the court holds that Defendants did not breach the contract.

## C. COUNTERCLAIM: RENOVATION EXPENSES AND PLAINTIFFS' UTILITY BILLS

Plaintiffs and Defendants both requested summary judgment in their favor as to their counterclaim.[7] There being no issue of material fact as to this issue, the court rules on the merits, dismissing Defendants' counterclaim as to the renovation expenses and granting as to the utility bills.

The contract contained a liquidated damages clause which Defendants accept as valid.

6. The relevant clause stated: "[T]he original due date of [Plaintiffs'] next payment of $50,000 due September 5 will be extended for a period of 30 days or until all agreed upon permits have been issued, whichever is longer."

7. The court interprets Plaintiffs' opposition as also being a cross-motion for summary judgment in their favor of all claims before the court.

Given that the parties do not argue to the contrary, the court assumes that the clause is not grossly unreasonable and, therefore, enforceable. *See* P.R. Laws Ann., tit. 31 §§ 3131, 3133; *Gil v. U.R.H.C.*, 109 P.R. Dec. 551, 1980 WL 138561 (1980) (holding that penalty clauses are enforceable unless they are found to be grossly unreasonable).

█ Pursuant to the contract, this clause came into effect when Plaintiffs defaulted on their contractual payment obligations. Accordingly, as the clause stated, Defendants are entitled to retain the monies received from Plaintiffs as compensation for the damages suffered.

█ The purpose of a liquidated damages clause is to have, at the time at which the parties execute the contract, an agreement as to the value of damages in the case of breach, instead of going through the process of having a court determine them after the breach. *See Jack's Beach Resort v. Tourist Company*, 112 P.R. Dec. 344, 1982 WL 210644 (1982).

Notwithstanding the existence of such a clause, Defendants claim further damages, alleging that Plaintiffs owe them for the property's renovation and repairs expenses, as well as for past due utility bill payments, because Plaintiffs were contractually responsible for all contents, expenses and utilities related to the property. Defendants do not argue that these damages are not contractual. On the contrary, they cite to the contract as the basis of Plaintiffs' obligation. The court concludes, then, that, as contractual damages, the monies received pursuant to the liquidated damages clause include compensation for the renovations expenses and lack any further claims in this respect. However, the clause cannot include compensation for the utility bills.

Even if this were not the case, the court is still empowered to decide on the merits since Defendants have entered the fray by coming forward with evidence in their own motion for summary judgment and have left themselves open to the appropriate entry of summary judgment against them. See the summary judgment discussion in Part II of this order.

Plaintiffs entered into separate and distinct obligations altogether with third parties—the various utility companies—and must comply with such obligations—payment for services provided. Defendants had to cover these obligations, though, in order to receive further utility services after retaking possession of the property. This action did not resolve Plaintiffs obligation. On the contrary, Plaintiffs themselves admitted their liability. Therefore, Plaintiffs owe defendants the sum of $3,434.25.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment and GRANTS IN PART and DENIES IN PART Plaintiffs' motion, dismissing all of Plaintiffs' claims, dismissing Defendants' counterclaim as to the renovation expenses and granting as to the utility bills.

IT IS SO ORDERED.