JOHN E. LYNCH & another[1] *vs.* STEPHANIE ANDREW.

Norfolk. April 12, 1985. — August 19, 1985.

Present: KASS, CUTTER, & SMITH, JJ.

*Contract*, Sale of real estate, Cancellation. *Damages*, Liquidated damages.

In an action against the seller of a house by prospective buyers claiming
return of their deposit pursuant to a mortgage financing condition in the
purchase and sale agreement, which excused them from performance
if, "despite . . . diligent efforts," they were unable to obtain a commitment
for a loan, the evidence, including the buyers' refusal to accept a bank's
offer to provide a "bridge loan" secured by a mortgage on the buyers'
existing house, which they soon intended to sell, was sufficient to warrant
a finding that the buyers had not made diligent efforts to obtain mortgage
financing. [624-626]

A liquidated damages clause in an agreement for the purchase and sale of
real estate, which provided that, if the prospective buyer defaulted, the
seller would retain the entire $25,400 deposit which the potential buyers
had made toward the $228,600 purchase price under the agreement, was
not, in the circumstances, so disproportionate to the losses and expenses
caused by the buyers' breach as to constitute a penalty. [627-628]

CIVIL ACTION commenced in the Superior Court Department
on May 21, 1982.

The case was heard by *B. Joseph Fitzsimmons, Jr.*, J.,
sitting under statutory authority.

*Martin S. Cosgrove* for the plaintiffs.

*Paul E. Troy* for the defendant.

KASS, J. At the behest of the buyers' lawyer, a mortgage
financing condition was added to a purchase and sale agreement
prepared on a printed form published by the Greater Boston

---

[1] JoAnne E. Lynch. John E. Lynch and JoAnn E. Lynch are husband
and wife.

Real Estate Board. Claiming inability to secure mortgage financing, the buyers, the plaintiffs in this action, say they were excused from performance and demand recovery of the $25,400 deposit which they made under that agreement.

The text of the financing clause is as follows: "Buyer shall apply to a conventional bank or other mortgage loan institution for a loan of [$155,000] payable in not less than thirty . . . years at prevailing interest rates.

"If, despite Buyer's diligent efforts, a commitment for such a loan is not obtained on or before April 26, 1982, the Buyer may terminate this Agreement by written notice to Seller or the brokers as agent for the Seller prior to the expiration of such time, whereupon all deposits made under this Agreement shall be [returned and this agreement shall be] void and without recourse to the parties hereto."

On the deadline date, April 26, 1982, the buyers notified the seller that they were unable to secure financing and, therefore, exercised their rights of termination under the agreement. The seller thought the buyers' effort to obtain mortgage financing had been less than diligent and refused to return the buyers' $25,400 deposit, thus provoking this action. A judge of the Probate Court, sitting by statutory designation in the Superior Court, heard the case without a jury. The judge determined that the buyers' efforts to secure financing lacked diligence, but that the liquidated damages clause in the purchase and sale agreement, which provided for retention by the seller of the entire deposit, was punitive. Actual damages, he found, were $8,400, and he reduced the amount which the seller could retain accordingly. Both sides have appealed from the resulting judgment.

1. *Diligence of the buyers' efforts to obtain financing.* The judge found that the buyers' efforts to obtain a mortgage loan consisted chiefly of inquiries about interest rates and lending options at various banks and the making of loan applications with two lenders, BayBank Middlesex and Old Stone Bank of Providence, Rhode Island. On the calculation that a loan from BayBank Middlesex was likely, the buyers withdrew the loan application to Old Stone to avoid a $275 application fee. As

the deadline for obtaining a loan commitment grew nearer, the buyers flirted with a third lending source, but it looked as if consideration of the loan would take them past the date of decision and the buyers made no further loan application. Only one application, to BayBank Middlesex for a loan of $130,000, was perfected.

There was evidence that BayBank informed the buyers that it was ready to lend the $130,000 requested, if the buyers would show the bank where the rest of the purchase money (the balance was $98,600) was coming from. The buyers responded that proceeds of sale of a house they owned in Wellesley would provide the money above the mortgage. No agreement to sell that house had yet been made, however. To accommodate its customer, the bank offered a "bridge loan," i.e., a loan for the balance figure which the borrowers would repay when they sold the house they already owned, and which the bank asked to secure with a mortgage on the buyers' existing house and a property they owned in Chatham.

Those loan terms struck the buyers as "getting a little more complicated." The bank offered a blanket mortgage but that, similarly, was not to the liking of the borrowers. On April 26th John Lynch called the loan officer he had been dealing with at the bank and told her he had "decided not to go through with the transaction," and requested that she send him a rejection letter. She did so.

In deciding that the buyers had not made diligent efforts to obtain a mortgage loan, the judge thought that the buyers could reasonably refuse to encumber other of their properties but that making only one loan application unreasonably staked the game on a single roll of the dice. Whether the buyers acted diligently is a factual question, the determination of which is entitled to the customary appellate deference. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). *C.C.&T. Constr. Co.* v. *Coleman Bros.*, 8 Mass. App. Ct. 133, 135 (1979). What constitutes diligent effort presents a question of law. We affirm the judge's conclusion that the buyers did not make diligent efforts to obtain mortgage financing, but do so on a different ground.

Unless otherwise qualified by express language, a financing condition clause presupposes that the buyers will accept commercially reasonable loan terms. Cf. *Stabile* v. *McCarthy*, 336 Mass. 399, 404 (1957), and *Sechrest* v. *Safiol*, 383 Mass. 568, 571 (1981), which require, to trigger a contingency in an agreement, conduct reasonably calculated to fulfill the condition by action or expenditure proportionate to the circumstances. See also *Betnar* v. *Rose*, 259 Ark. 820, 827 (1976); *Manning* v. *Bleifus*, 272 S.E.2d 821 (W. Va. 1980). If less is required, the condition becomes an option. It was reasonable for the bank to be concerned about, and make some provision for, the funds required above the mortgage. Compare *Anaheim Co.* v. *Holcombe*, 246 Or. 541, 545-547 (1967) (Nebraska corporation which sought to buy a $40,000 residence for its managing agent in Oregon did not exercise reasonable efforts under a financing contingency when its officers refused to sign a proffered loan agreement in their individual capacities, even though the corporation had been organized only a few months before, had not qualified to do business in Oregon, and had net assets only slightly in excess of $20,000). See generally Annot., Purchaser's Efforts to Secure Financing, 78 A.L.R.3d 880 (1977 with 1984 supp.)

In the instant case, a single bridge loan involving property which the buyers soon intended to sell, in any event, would not have been unduly onerous. The standard of reasonableness is objective at least to the degree that it cannot be satisfied by the buyers with their flat statement that the various loan propositions made by the bank were "too complicated." See *Phillipe* v. *Thomas*, 3 Conn. App. 471, 472-476 (1985) (in contract with mortgage contingency, court implies a promise to exert objectively reasonable efforts). Compare *Fry* v. *George Elkins Co.*, 162 Cal. App. 2d 256, 260 (1958) (rejection of two percent prepayment penalty in loan terms from mortgage company, when lenders not requiring such terms had refused to make loan, did not constitute a good faith attempt to obtain financing). When buyers, through their actions, bring about a failure to satisfy a condition, they may not claim the benefit of that failure. See *Sechrest* v. *Safiol*, 383 Mass. at 570; *Smith* v. *Evans*, 620 S.W.2d 627, 628 (Tex. Civ. App. 1981).

2. *Liquidated damages.* The option of the seller to retain the buyers' deposit as liquidated damages (as an alternative to specific performance) is, as buyers' counsel conceded, the common practice in Massachusetts conveyancing. See also Mendler, Massachusetts Conveyancer's Handbook § 1:17 (3d ed. 1984). We are disinclined to tamper with a well established solution to the problems of expense and uncertainty in litigating the precise damages in cases of this kind. It is appropriate to recall the observation of Justice Holmes, that "so far as precedent permits the proper course is . . . not to undertake to be wiser than the parties." *Guerin* v. *Stacy*, 175 Mass. 595, 597 (1900).

It has been the rule in Massachusetts that contract provisions which clearly and reasonably establish liquidated damages should be enforced, if "not so disproportionate to the losses and expenses caused by the defendant's breach" as to constitute a penalty. *Warner* v. *Wilkey*, 2 Mass. App. Ct. 798, 799 (1974). *Kaplan* v. *Gray*, 215 Mass. 269, 270-273 (1913). There is nothing to suggest that the liquidated damages provision in this case was negotiated at other than an arm's length basis between adequately represented parties. If there was any advantage in experience or sophistication, it was on the side of the buyers. See *Manganaro Drywall, Inc.* v. *Penn-Simon Constr. Corp.*, 357 Mass. 653, 657 (1970).

Under paragraph 19 of the purchase and sale agreement, if the buyers defaulted, half of the deposit was to be paid to the broker, who was a party to the agreement. See *Warner* v. *Wilkey*, 2 Mass. App. Ct. at 799. Cf. *Capezzuto* v. *John Hancock Mut. Life Ins. Co.*, 394 Mass. 399, 404 n.5 (1985). The funds left to the seller, therefore, are $12,700. When the seller managed to sell her property in October, 1982, she received $5,000 less for it than her price with the buyers in the instant case. She also claimed loss of the opportunity to purchase a house she had placed under agreement on the strength of her agreement with the plaintiffs. That house was larger, required less upkeep, and generally was a better investment than the house she bought the following autumn. The delay in the sale, the seller claimed, also cost her payments which her

ex-husband had been prepared to make and put her to extra moving expenses.

This was not a case in which the house sold within days of the first buyer's default, at about the same price, and without complicating factors which make the actual damages difficult to calculate with precision. It is not a case in which the liquidated damages provision is grossly disproportionate to a reasonable estimate of actual damages. Cf. *A-Z Servicecenter, Inc.* v. *Segall*, 334 Mass. 672, 675 (1956); *Daley* v. *J.F. White Contr. Co.*, 347 Mass. 285, 288-289 (1964); *Security Safety Corp.* v. *Kuznicki*, 350 Mass. 157, 158 (1966). When losses are difficult to quantify, considerable deference is due the parties' reasonable agreement as to liquidated damages. *Kroeger* v. *Stop & Shop Cos.*, 13 Mass. App. Ct. 310, 322 (1982). See *Kaplan* v. *Gray*, 215 Mass. at 272.

The judgment is vacated and judgment shall be entered for the defendant.

*So ordered.*