JOHN E. KELLY & another[1] *vs.* STEVEN A. MARX & another.[2]

No. 96-P-0114.

Worcester. December 3, 1997. - May 21, 1998.

Present: JACOBS, GILLERMAN, & SPINA, JJ.

Further appellate review granted, 428 Mass. 1102 (1998).

*Real Property,* Purchase and sale agreement. *Damages,* Liquidated damages.

Discussion of cases and authorities considering the enforceability of a liquidated damages provision in a contract. [827-829]

In a civil action in which the plaintiff buyers sought to recover a deposit made as liquidated damages in the event of breach, under an agreement for the purchase and sale of real property, the defendant sellers did not demonstrate that they suffered any loss or damages, where the defendants had accepted an offer from a third party contingent on the plaintiffs' nonperformance, at a higher price than the plaintiffs had agreed to pay, and on which they closed less than three weeks after the plaintiffs' failure to perform; in the circumstances, the plaintiffs were entitled to the return of their deposit. [829-831] SPINA, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on November 28, 1994.

The case was heard by *Daniel F. Toomey,* J., on motions for summary judgment.

*Howard E. Stempler* for the plaintiffs.

*David J. Kneeland, Jr.,* for the defendants.

JACOBS, J. The plaintiffs (buyers) essentially concede they repudiated their agreement to purchase real estate from the defendants (sellers). At issue is the buyers' right to recover a deposit made by them in conjunction with that purchase and sale agreement.[3] Acting on cross motions for summary judg-

---

[1]Pamela B. Kelly.

[2]Merrill S. Marx.

[3]As do the parties, we treat the buyers' payment of $1,000 made when their offer to purchase was accepted and the payment of $16,750 at the time the purchase and sale agreement was signed as a single deposit made in connection with the agreement.

ment, a Superior Court judge ruled in favor of the sellers. We reverse and order the entry of a judgment requiring the return to the buyers of their $17,750 deposit.

The law's abhorrence of contractual penalties engenders no greater controversy than when it affects the enforcement of liquidated damages clauses contained in real estate purchase and sale agreements. A slim majority of jurisdictions, see Appendix, appears to favor a "single look" approach, which tests the validity of such a clause only as of the time of contract. That view gives pragmatic deference to the bargain struck by the parties and, in the words of Justice Holmes, cautions courts "so far as precedent permits . . . to enforce contracts according to their plain meaning and not to undertake to be wiser than the parties." *Guerin* v. *Stacy*, 175 Mass. 595, 597 (1900). Competing with that approach in an almost equal number of jurisdictions, see Appendix, is the view espoused by this court, that requires in some circumstances a "second look" as of the time of the breach to determine if the sum stipulated as liquidated damages is "unreasonably and grossly disproportionate to the real damages from a breach, or is unconscionably excessive." *Shapiro* v. *Grinspoon*, 27 Mass. App. Ct. 596, 603 (1989). As briefed, this case primarily raises questions as to the methodology for taking a "second look" and only incidentally as to the propriety of such an approach.

The pertinent undisputed facts are as follows. On March 18, 1994, the buyers signed an offer to purchase residential property in Worcester for $355,000 which soon thereafter was accepted by the sellers. By the first week of May, 1994, the parties entered into a purchase and sale agreement. The agreement acknowledged the deposit of $17,750 against a purchase price of $355,000 and provided for a closing "on or before" September 1, 1994. One of its clauses stated: "If the Buyer shall fail to fulfill the Buyer's agreements herein, all deposits made hereunder by the Buyer shall be retained by the Seller as liquidated damages."[4] By letter dated August 9, 1994, an attorney for the buyers authorized the sellers "to market the subject property for sale at this time." The letter also stated, "if no purchaser is found by September 1 and the [buyers] have procured a purchaser for their home . . . they would still close

---

[4]For similar clauses, see Eno & Hovey, Real Estate Law §§ 763, 797 (3d ed. 1995).

as agreed."[5] There is no contention that the buyers were ready to purchase on September 1, 1994. On August 24, 1994, the sellers accepted an offer from a third party to buy the property for $360,000. The accepted offer states: "This agreement is contingent upon the Kellys not performing after which the seller [the Marxes] will be able to convey to offerer." Following the execution of a purchase and sale agreement on September 8, 1994, reciting a deposit of $18,000, the property was conveyed to the third party on September 20, 1994, for the recited consideration of $360,000.

In *Shapiro* v. *Grinspoon, supra,* this court determined that a liquidated damages provision in a real estate purchase and sale agreement is subject to two alternative tests. "[T]he judge should first determine whether the actual damages to the [sellers] are difficult to ascertain. If they are, in view of the reasonableness of the forecast of those damages, the liquidated damages provision should be enforced. If not, he should consider whether [the amount designated as liquidated damages] is so 'unreasonably and grossly disproportionate' to, or is 'unconscionably excessive' of, the actual damages caused by the breach so as to make the liquidated damages a penalty. Finally, if the judge determines that the liquidated damages provision is unenforceable, and that the [sellers'] losses exceed the difference between the contract price and the saleable value of the property at the time of breach, he should award to the defendants the amount of the actual damages." *Id.* at 605 (citation omitted). This formulation relied heavily upon the analysis of a liquidated damages provision in *A-Z Servicenter, Inc.* v. *Segall,* 334 Mass. 672, 675 (1956), a case involving an acceleration clause in a promissory note. Our court also found support in Restatement (Second) of Contracts § 356, comment b and il-

---

[5]The buyers do not rely on this letter. It is arguable that it could be construed as an offer, an implicit condition of which was the return of the buyers' deposit in the event that the property was sold without significant delay or loss to the sellers, as is the case here.

In the circumstances of this case, we also do not consider whether the failure of either party to make a tender on the "time is of the essence" date established for performance discharged both parties of their obligations. Compare *Devine* v. *Williams Bros., Inc. of Marshfield,* 4 Mass. App. Ct. 816 (1976). That issue has not been presented in the summary judgment materials, and neither party has argued it on appeal.

lustration 4 (1981),[6] and adopted a rule which we opined was "consistent with compensatory damages principles, gives continued recognition . . . to the validity of fair and freely bargained for liquidated damages provisions, preserves the power of the court to grant equitable relief on retrospective consideration, and provides a fixed and final point at which to measure damages." *Shapiro* v. *Grinspoon*, 27 Mass. App. Ct. at 604. The court also noted the decision in *Colonial at Lynnfield, Inc.* v. *Sloan*, 870 F.2d 761, 765 (1st Cir. 1989), released four months earlier, where it was stated that the conclusion that a "liquidated damages provision was a reasonable *estimate* of difficult-to-ascertain damage at the time the parties agreed to it . . . does not end our inquiry . . . . Massachusetts law clearly envisions a retrospective appraisal of a liquidated damages provision in certain circumstances. If the actual damages turn out to be 'easily ascertainable,' a court must consider whether the stipulated sum is 'unreasonably and grossly disproportionate to the real damages from a breach,' " quoting from *A-Z Servicenter, Inc.* v. *Segall, supra* at 675.

The "second look" approach enunciated in *Shapiro* v. *Grinspoon* is not lacking for critics, especially in the context of real

[6]Restatement (Second) of Contracts § 356, denominated Liquidated Damages and Penalties, states in paragraph (1): "Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty."

Comment b states in part: "If the difficulty of proof of loss is great, considerable latitude is allowed in the approximation of anticipated or actual harm. If, on the other hand, the difficulty of proof of loss is slight, less latitude is allowed in that approximation. If, to take an extreme case, it is clear that no loss at all has occurred, a provision fixing a substantial sum as damages is unenforceable. See Illustration 4."

Illustration 4 describes a situation in which a contractor's delay in constructing a race track grandstand caused no loss because the owner was not permitted to operate during the period of delay. It states: "Since the actual loss to [the owner] is not difficult to prove, [the contractor's promise to pay $1,000 for each day of delay] is a term providing for a penalty and is unenforceable on grounds of public policy."

A commentator writes: "This illustration conflicts with the stated rule, as the [liquidated damages] clause was reasonable ex ante." Rea, Efficiency Implications of Penalties and Liquidated Damages, 13 J. Legal Stud. 147, 151 (1984).

estate agreements[7] where there is substantial economic purpose in permitting the parties to avoid litigation and to be secure in their determination of the monetary risk and compensation in the event of a default by the buyer. It is arguable that such considerations may well call for legislative remediation or for a departure from *Shapiro* v. *Grinspoon*, as advocated by the dissent. We believe, however, that the unusual circumstances with which we are confronted militate against any retreat from precedent in this action. We have here precisely the case envisioned by our court in an opinion strongly affirming the role of a liquidated damages provision as "a well established solution to the problems of expense and uncertainty in litigating the precise damages" caused by a breach of a real estate agreement, while, at the same time, acknowledging the possible exception to enforcement which might exist when "the house sold within days of the first buyer's default, at about the same price, and without complicating factors which make the actual damages difficult to calculate with precision." *Lynch* v. *Andrew*, 20 Mass. App. Ct. 623, 628 (1985).

Were our inquiry limited to the circumstances obtaining at the time the parties entered into their agreement, we would permit the sellers to retain the deposit, amounting to five percent of the purchase price. Not only were the potential damages from a breach by the buyers, possibly occurring up to four months later, difficult to predict at the time of contracting, but the amount of the deposit (five percent of the purchase price) was within the ordinary range for a real estate purchase and sale agreement. See *Schrenko* v. *Regnante*, 27 Mass. App. Ct. 282,

---

[7]See Eno & Hovey, Real Estate Law § 3.25, at 38 (3d ed. 1995) (commenting upon the adoption of the "second look" approach in Massachusetts, the authors complain: "Why parties cannot agree to an orderly termination of an agreement is a mystery to [us]"); Hovey, Misleading Liquidated Damages Clauses, 21 Mass. Law. Wkly. 2957, 2959 (1993) (criticizing *Shapiro* v. *Grinspoon*, *supra*, as a "devastating decision," the author asks: "[W]hy can't normal, consenting adult sellers and buyers agree to breach damages in advance? . . . What is wrong with a penalty under a contract fairly and knowledgeably entered into? Isn't the law interested in resolving disputes, rather than creating conflicts? Why does the Appeals Court hate real estate attorneys?"); Sacks & Daniszewski, One View Too Many: Courts Take a "Second Look" at Liquidated Damages Provisions, 34 Boston B.J. (No. 2) 12, 13, 15 (1990) (arguing the "second look" approach invites litigation and was arrived at in *Shapiro* v. *Grinspoon*, at least in part, by reliance on a "grammatical ambiguity" in *A-Z Servicenter, Inc.* v. *Segall*, *supra*, and "a somewhat obscure Restatement illustration").

284 (1989) (recognizing a 4.4 percent liquidated damages clause as "routine" and reasonable); 1 Residential Real Estate Basics at 7 (MCLE 1996) (indicating that buyers often negotiate a five percent deposit); Mendler, Massachusetts Conveyancers' Handbook § 1:17 (3d ed. 1984) (recommending that sellers obtain a ten percent deposit). As found by the judge, the clause, viewed at the time of its acceptance, "was objectively fair to both parties."

Under the Massachusetts approach, however, the inquiry must be further informed by a retrospective view taken "as of the time of the breach." *Shapiro* v. *Grinspoon*, 27 Mass. App. Ct. at 604. The judge undertook such a "second look," inferentially acknowledging that it encompasses the circumstances which follow the breach and includes expenses such as additional mortgage service costs, taxes, and legal fees.[8] He concluded that damages were "not difficult to ascertain" because there was "no evidence that the [sellers] incurred any actual damages." That conclusion appears to derive from the fact that the sellers, in their discovery responses and summary judgment submissions, did not attach a monetary figure to their claimed and quantifiable damages.[9] In the context of the parties' cross motions for summary judgment and the sellers' concession that there was no dispute of material fact, the failure to quantify these readily ascertainable damages supports the judge's conclu-

---

[8]While theoretically defensible, the alternative approach — confinement of the second look to the period preceding the precise moment of breach — often will reveal no loss and lead to the conclusion that because there were no damages, they are easily ascertainable.

[9]In an affidavit filed below, the sellers, without ascribing a dollar amount, describe their damages as consisting of "[t]wenty days of property maintenance expenses including mortgage principal and interest, real estate taxes, homeowners insurance, gas and electric, water/sewer, telephone, security system monitoring, pest control and lawn maintenance." They also state they suffered a "considerable loss in legal fees" and a loss of rental income with respect to a rental apartment on the subject property that they claim they did not lease out due to the buyers' indication that they would take it off the market. They do not rely on an attachment to the purchase and sale agreement indicating that the monthly rent produced by this apartment is between $650 and $700. In any event, there is no indication of associated expenses. In response to a request for "[a]ll documents evidencing any financial loss," the sellers promised to provide them. There is no indication that they did. It is also noteworthy that the sellers were not obliged to pay a broker's fee under the first purchase and sale agreement until they "receiv[ed] all purchase proceeds." Accordingly, the sellers make no claim for additional broker's expenses based on the buyers' breach.

sion that there is no proof of actual damages. In any event, even if the sellers had attached dollar amounts to their claims, the brevity of the period between the breach and the subsequent sale, coupled with the absence of evidence of a complicating factor such as a lost opportunity to the sellers to purchase substitute housing during that period, see *Lynch* v. *Andrew*, 20 Mass. App. Ct. at 627, support the conclusion that damages are easily ascertainable.

It is when we turn, as did the judge, to the final question under the "second look" formulation, that we differ with him. He concluded that "[a]lthough there is no indication of any actual damages to the [sellers], their retention of the [buyers'] $17,750 deposit is, nevertheless, neither unreasonable nor excessive under the circumstances of the breach, the overall value of the contract, and the customary nature of this type of a deposit." Our disagreement with the judge is bottomed on more than a difference of opinion with respect to a concededly imprecise and subjective standard. It is based in significant part on evidence of the agreement to purchase and the actual sale, both occurring within days of the breach and indicating that the market value of the property may well have increased while under contract to the buyers. See *Shapiro* v. *Grinspoon*, 27 Mass. App. Ct. at 604-605. That proof of value, when considered with the sellers' significant failure to quantify their damages after ample opportunity to do so, leads us to conclude that the sellers suffered no net loss due to the breach and, in fact, may have gained financially as a result. In essence, there are no damages to liquidate. These limited circumstances make this the "extreme case" of "no loss" described in comment b of § 356 of the Restatement (Second) of Contracts, and dictate that the clause establishing liquidated damages at $17,750 be treated as a penalty. To do otherwise is to ignore the principle that "[l]iquidated damages must compensate for loss rather than punish for breach." *Space Master Intl., Inc.* v. *Worcester*, 940 F.2d 16, 18 (1st Cir. 1991).

The judgment is reversed and a judgment shall enter for the plaintiff buyers requiring the return of their deposit.

*So ordered.*

APPENDIX.

Although differing language and context of the decisions make precise categorization difficult, our survey indicates the following:

1. Twenty-two courts appear to apply the "single look" approach by limiting evaluation of the reasonableness of a liquidated damages provision to the time of contract formation: *Barnette* v. *Sayers*, 289 F. 567, 570 (D.C. Cir. 1923)*; *Rattigan* v. *Commodore Intl. Ltd.*, 739 F. Supp. 167, 169 (S.D.N.Y. 1990) (applying New York law); *Tardanico* v. *Murphy*, 983 F. Supp. 303, 309 (D.P.R. 1997)*; *Williwaw Lodge* v. *Locke*, 601 F.2d 236, 239 (Alaska 1979)*; *Alley* v. *Rogers*, 269 Ark. 262, 264 (1980)*; *Rohauer* v. *Little*, 736 P.2d 403, 410 (Colo. 1987)*; *Hanson Dev. Co.* v. *East Great Plains Atl. Corp. Ctr., Inc.*, 195 Conn. 60, 65 (1985)*; *Brazen* v. *Bell Atl. Corp.*, 695 A.2d 43, 48 (Del. 1997); *LeFemine* v. *Baron*, 573 So. 2d 326, 328 (Fla. 1991)*; *Fickling & Walker Co.* v. *Giddens Constr. Co.*, 258 Ga. 891, 897-898 (1989)*; *Czeck* v. *Van Helsland*, 143 Ind. App. 460, 463 (1968); *Anne Arundel County* v. *Norair Engr. Corp.*, 275 Md. 480, 494 (1975); *Roland* v. *Kenzie*, 11 Mich. App. 604, 612 (1968); *Frank* v. *Jansen*, 303 Minn. 86, 91 (1975)*; *Trustees of State Insts. of Higher Learning* v. *Johnson*, 507 So. 2d 887, 890 (Miss. 1987); *Gruschus* v. *C.R. Davis Contr. Co.*, 75 N.M. 649, 655 (1965); *Fisher* v. *Schmeling*, 520 N.W.2d 820, 822 (N.D. 1994)*; *Olmo* v. *Matos*, 439 Pa. Super. 1, 8 (1994)*; *Safari, Inc.* v. *Verdoorn*, 446 N.W.2d 44, 46 (S.D. 1989)*; *Woodhaven Apartments* v. *Washington*, 942 P.2d 918, 921 (Utah 1997)*; *Brooks* v. *Bankson*, 248 Va. 197, 208 (1994)*; *Watson* v. *Ingram*, 124 Wash. 2d 845, 851-853 (1994)*.

2. Twenty courts seem to take a "second look" under rules permitting consideration of actual damages flowing from a breach: *Thanksgiving Tower Partners* v. *Anros Thanksgiving Partners*, 64 F.3d 227, 232 (5th Cir. 1995)* (applying Texas decisions); *Yockey* v. *Horn*, 880 F.2d 945, 952-953 (7th Cir. 1989) (applying Illinois law); *Southpace Properties, Inc.* v. *Acquisition Group*, 5 F.3d 500, 505 (11th Cir 1993)* (applying Alabama law); *Ventura* v. *Grace*, 3 Haw. App. 371, 374 (1982)*; *McEnroe* v. *Morgan*, 106 Idaho 326, 331-332 (1984)*; *Rohlin Constr. Co.* v. *Hinton*, 476 N.W.2d 78, 80 (Iowa 1991); *Mattingly Bridge Co.* v. *Holloway & Son Constr. Co.*, 694 S.W.2d 702, 705 (Ky. 1985); *Hawkins* v. *Foster*, 897 S.W.2d 80, 85 (Mo. Ct. App. 1995)*; *Weber* v. *Rivera*, 255 Mont. 195, 200 (1992)*; *Kozlik* v. *Emelco, Inc.*, 240 Neb. 525, 536-537 (1992); *Mason* v. *Fakhimi*, 109 Nev. 1153, 1156-1157 (1993)*; *Shallow Brook Assocs.* v. *Dube*, 135 N.H. 40, 48-49 (1991)*; *Wasserman's Inc.* v. *Middletown*, 137 N.J. 238, 251 (1994)*; *Knutton* v. *Cofield*, 273 N.C. 355, 361 (1968); *Lake Ridge Academy* v. *Carney*, 66 Ohio St. 3d 376, 382 (1993); *Illingworth* v. *Bushong*, 297 Or. 675, 693 (1984)*; *Crews* v. *Dexter Rd. Partners*, Court of Appeals of Tennessee No. 02A01-9603-CH-00045 (Jan. 28, 1998); *Wheeling Clinic* v. *Van Pelt*, 192 W. Va. 620, 626 (1994); *Koenings* v. *Joseph Schlitz Brewing Co.*, 126 Wis. 2d 349, 363 (1985); *Jessen* v. *Jessen*, 810 P.2d 987, 990 (Wyo. 1991).

3. The issue seems to be controlled by statutes in three jurisdictions: *Weber, Lipshie & Co.* v. *Christian*, 52 Cal. App. 4th 645, 654 (1997) (California Civil Code § 1671[b] [West 1985] states that "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made"); *Philippi* v. *Viguerie*, 606 So. 2d 577, 579 (La. Ct. App. 1992) (statute provides that parties may stipulate liquidated damages, but a court may modify those damages where they are manifestly unreasonable); *1414 Partnership* v. *Taveau*, 815 P. 2d 1228, 1230 (Okla. Ct. App. 1991)* (Okla. Stat. Tit. 15, § 215[B] [1991] provides that: "A provision in a real estate sales contract, providing for the payment of an amount which shall be presumed to be the amount of damages sustained by a breach of such contract, shall be held valid and not a penalty, when such amount does not exceed five percent [5%] of the purchase price").

4. We are unable to discern from the following decisions whether they

represent a single or second look position: *Larson-Hegstrom & Assocs., Inc.* v. *Jeffries*, 145 Ariz. 329 (1985)\*; *White Lakes Shopping Ctr., Inc.* v. *Jefferson Standard Life Ins. Co.*, 208 Kan. 121 (1971); *Pacheco* v. *Scoblionko*, 532 A.2d 1036 (Me. 1987); *Highgate Assocs., Ltd.* v. *Merryfield*, 157 Vt. 313 (1991).

\*Identifies real estate cases.

SPINA, J. (dissenting). I respectfully dissent. The parties, in the liquidated damages clause, bargained for peace of mind and certainty of result. There was, as the majority observes, nothing facially unjust about the terms of that clause: the five percent deposit was typical, and the parties, represented by counsel, are somewhat sophisticated. The buyers did not negotiate a "second look"; and the sellers did not negotiate an option to seek actual damages. The parties instead agreed upon the simplest form of liquidated damages clause, negotiating a clear break in the event of a default.

Our "second look" reveals nothing that the parties had not contemplated. The facts settled at one end of the spectrum: the seller had no damages. They could have settled at the opposite end: the bottom could have fallen out of the market and the seller's losses could have been far greater than five per cent. We have, by our decision, permitted one party to reopen and rewrite an otherwise rational and commendable pact.

The "second look" approach first appeared in *Shapiro* v. *Grinspoon*, 27 Mass. App. Ct. 596 (1989), a decision that claims direct lineage under *A-Z Servicenter, Inc.* v. *Segall*, 334 Mass. 672 (1956). However, it is not clear whether that case anticipated any progeny. *A-Z Servicenter* applied traditional analysis to a liquidated damages clause in a note secured by a mortgage. That note provided that the entire sum due under the note (including unearned interest), less payments made, would be "immediately due and payable as liquidated damages and not as a penalty." *Id.* at 673. Noting that unearned interest under a note was not a measure of contract damages, the court there held that its inclusion in liquidated damages "bears no rational relation to the balance remaining unpaid on the note . . . [and therefore] constituted a penalty." *Id.* at 676. "When a note is given for a fixed sum representing principal and interest for the period of the note, the clause accelerating the maturity of the debt will not be enforced as to future interest. . . . To al-

low a charge for unearned interest in the attending circumstances would be unconscionable." *Id.* at 677.

Unlike *A-Z Servicenter*, there is nothing facially unconscionable or smacking of a penalty in the instant case. This is a case "where the sum agreed upon by the parties at the time of the execution of the contract represents a reasonable estimate of the actual damages," which were otherwise difficult to ascertain at the time. *Id.* at 675. The liquidated damages clause here was eminently suitable for the circumstances, and should be enforced as written, and as intended. I would affirm the judgment.