Greco, J.
This is an action pursuant to a financing contingency clause in the parties’ purchase and sale agreement to recover a deposit paid by the plaintiffs as prospective buyers of the defendants’ real estate. After trial, judgment was entered for the defendant-sellers, and the plaintiffs filed this Dist./Mun. Cts. R. A. D. A., Rule 8C appeal.
A malfunction in the recording device at trial prevented the plaintiffs from obtaining a cassette tape and preparing a transcript. While the reconstructed record, see Rule 8C(e), before us is not very clear, the following facts appear. On July 12,1996, the parties executed a written agreement for the plaintiffs’ purchase of the defendants’ property at 111 Elm Street, Marblehead, Massachusetts. The plaintiffs paid a total purchase deposit of $18,750.00. The purchase and sale agreement contained a standard financing clause whereby the plaintiff-buyers agreed to seek a thirty year mortgage loan at prevailing rates in the amount of $312,000.00. The clause further provided that upon the plaintiffs’ timely written notice to the sellers that they were unable to obtain such financing, the agreement would he voided and the deposit returned to the plaintiffs. The date for such notice was originally set at August 8,1996, but was extended four times by agreement of the parties, ultimately to August 29,1996.
The plaintiffs’ application to Fleet Mortgage Corporation for a conventional mortgage loan was denied because their debt to income ratio prevented them from qualifying for the private mortgage insurance required by Fleet. The plaintiffs did not attempt at this point to exercise their rights under the financing contingency clause, but instead pursued with Fleet the possibility of a “portfolio” mortgage loan at slightly higher rates. In an apparent effort to improve their financial picture, plaintiff Paul B. Mervis and Fleet’s loan officer discussed potential rental income from the plaintiffs’ home at 131 Washington Street in Marblehead. There was evidence, and the trial judge so found, that even though the plaintiffs were hoping to sell their home and had no intention of renting it, Mr. Mervis represented that the property could yield $1,800.00 per month in rental income. Somehow, this mere representation was sufficient for Fleet, which issued a commitment on August 27, 1996 for a thirty year, $300,000.00 mortgage loan. The commitment, however, was conditional on the plaintiffs’ paying off one of their existing loans and, more significantly, renting their Washington Street home for $1,800.00 a month. With only two days remaining before the expiration of their financing contingency clause dead *51 line, the plaintiffs notified the defendants in writing that they were withdrawing their purchase offer because they had been “unable to arrange acceptable financing.”
The trial judge correctly found that, under the financing contingency clause, the plaintiffs would have been able to withdraw from the transaction after their initial application was rejected for their failure to qualify for mortgage insurance. However, the judge also found that because the plaintiffs redoubled their efforts and pressed the matter further with Fleet, they were then bound to accept Fleet’s subsequent commitment for financing, notwithstanding the conditions attached, and that the defendants were thus entitled to retain the plaintiffs’ deposit. Of “critical” importance to the court was its finding, justified on this record, that it was Mr. Mervis who represented to Fleet that the plaintiffs’ Washington Street residence could be rented for $1,800.00 per month. Thus, in the trial court’s view, once the plaintiffs received a conditional commitment based on their own representation of the rent they could receive, they had to proceed with the sale despite the undisputed facts that they were not then renting the property, they had no guarantee that they would be able to rent it for such an amount, Fleet would withdraw its conditional mortgage commitment if they had not rented it by the closing date, and the time for exercising their cancellation rights under the contingency clause had not yet expired. In effect, the court found that the plaintiffs were estopped from exercising their contractual rights under the contingency clause; they were obligated to proceed with the purchase of the defendants’ property despite the uncertainty of their financing and take then-chances on renting the Washington Street property.
1. The trial judge not only made written findings of fact in this case, but also ruled on seventy-four requests for findings of fact submitted by the plaintiffs even though he was not required to do either. Mass. R. Civ. R, Rule 52 (c). See also Huikari v. Eastman, 362 Mass. 867 (1972); Macone Bros., Inc. v. Strauss, 1997 Mass. App. Div. 95, 96. The plaintiffs now contend on this appeal that some of the court’s findings were not supported by the evidence, and that the court’s rulings on the requests for findings of fact were inconsistent with the findings and with each other. It is unnecessary to engage in an extensive analysis of the court’s findings and responses to requests for findings, a task which is made almost impossible by the state of the reconstructed record before us. While the plaintiffs deemed it necessary to submit seventy-four requests for findings and while the intricacies of the financial matters at issue were somewhat complicated, the case ultimately turned on the sequence of a few key events and on the nature of the financing commitment obtained. On those matters, there were no significant factual disputes, and the trial court’s findings were sufficiently supported by the evidence and thus not “clearly erroneous.” Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 509 (1997); Mark Moore Homes, Inc. v. Tarvezian, 1998 Mass. App. Div. 171, 177. This appeal turns instead on the legal conclusions drawn from the subsidiary facts found.
2. It is also unnecessary to address the plaintiffs’ specific charges of error in the trial court’s disposition of their requests for rulings of law. As noted, the judge made detailed findings of fact and explained the basis for his ultimate decision. In this case, “the thought process which led to his decision [was] fully articulated ... [and] responses to requests for rulings [were] superfluous.” Lynn v. Nashawaty, 12 Mass. App. Ct. 310, 315 (1981); Green v. Blue Cross & Blue Shield of Mass., Inc., 1996 Mass. App. Div. 165, 169; Copp v. Hague, 1994 Mass. App. Div. 11, 12.
3. Based on the trial judge’s findings of fact, we conclude that the judgment for the defendants cannot stand.
The trial judge correctly found that the mortgage contingency clause deadline was August 29,1996, and that the plaintiffs notified the defendants on August 29, 1996 that they were exercising their right to terminate the purchase and sale agreement and recover their deposit. The trial judge then concluded, however, *52 that even though the plaintiffs gave notice before the deadline expired, “it was too late” because “[a] mortgage commitment under the terms of the parties’ contract had been issued by the lender and the plaintiffs’ choices were to either close on the property or forfeit their deposit.” This conclusion cannot be sustained “upon a reasonable view of the evidence adduced at trial.” See DeWolfe New England v. Tich, 1989 Mass. App. Div. 182, 184.
It is established that “[u]nless otherwise qualified by express language, a financing condition clause presupposes that the buyers will accept commercially reasonable loan terms.” Lynch v. Andrew, 20 Mass. App. Ct. 623, 626 (1985). The “standard of reasonableness is objective,” which means that buyers cannot reject a financing commitment that is not “unduly onerous.” Id. A mortgage or financing commitment which is conditional would be sufficient to preclude a buyer from exercising his rights under a financing contingency clause if the conditions to the commitment were not, in fact, “unduly onerous.” However, the condition attached by Fleet to its mortgage commitment to the plaintiffs was, in the circumstances of this case, unduly onerous. As a prerequisite to financing, the plaintiffs were required to make a significant change in their plans to sell their Washington Street home and to lease it instead. Nothing in the parties’ purchase and sale agreement can reasonably be construed as contemplating or obligating them to do so. Nor was this a situation, contrary to the court’s apparent conclusion, in which the buyers’ direct conduct or culpable inaction brought about the contingency which triggered their right to cancel the purchase agreement. See Sechrest v. Safiol, 383 Mass. 568, 570-571 (1981). While Mr. Mervis discussed the potential rental value of the Washington Street property with Fleet’s loan officer, there is no evidence that he requested, or even envisioned, a loan commitment conditioned on the leasing of that property. The decision to impose such a financing condition was Fleet’s alone.
Moreover, this was not a condition dependent solely on the plaintiffs’ willingness to take some unilateral action or to accept some obligation. See, e.g., Lynch v. Andrew, supra (willingness to accept a bridge loan); Anaheim Co. v. Holcombe, 246 Or. 541, 545-547 (1967), cited in Lynch (willingness to sign a loan agreement in individual rather than corporate capacity); Fry v. George Elkins Co., 162 Cal. App. 2d 256, 260 (1958), also cited in Lynch (willingness to accept a two percent prepayment penalty) . Here, the plaintiffs were required to find a tenant willing to lease the property at $1,800.00 a month. There was no evidence that such a tenant was in place or had even shown an interest. Further, if they did not procure a tenant by the August 29th contingency clause deadline, they would not have satisfied Fleet’s mortgage condition and thus would have been uncertain as to whether the requisite financing would ever be available. The obvious purpose of a financing contingency clause is to eliminate such uncertainty, and the clause in the instant case did not require that the plaintiffs allow the deadline to pass without knowing if indeed they would have financing at the time of the closing. It is clear on the record that if the plaintiffs did not lease the Washington Street property for $1,800.00 per month, Fleet would have withdrawn its conditional commitment and would have refused to provide a mortgage loan. Thus even if it was commercially reasonable to require the plaintiffs to lease the property they intended to sell, it was not reasonable to require them to do so within forty-eight hours. To endeavor to accomplish such a feat in such a short period of time was not feasible, and would have required action “disproportionate in the circumstances.” See Stabile v. McCarthy, 336 Mass. 399, 404 (1957).
Accordingly, the trial court’s judgment for the defendants is vacated. This matter is returned to the trial court for the entry of judgment for the plaintiffs.
So ordered.