Welsh, J.
This is an action to recover a deposit payable under a purchase and sale agreement. The plaintiff (seller) entered into an agreement to sell her home at 55 Partridge Valley Road in West Yarmouth to the defendant (buyer) for the sum of $265,000. The sum of $500 was paid as a binder. The agreement required that $26,000 be paid upon execution of the agreement by the parties. The agreement contained a mortgage contingency clause which gave the buyer the option to terminate the agreement and to a return of the deposit if he were unable to obtain a mortgage financing agreement of $238,500 (i.e., 90% of the purchase price), the balance due on the purchase price at closing, by October 31, 2001.[1] The agreement also provided that the seller had the right to retain the deposit paid as liquidated damages if the buyer defaulted on the agreement.[2]
The judge concluded that the buyer did in fact have the requisite mortgage commitment on October 31, 2001, and unjustifiably defaulted on the agreement, entitling the seller to the deposit of $26,500. Judgment entered for the seller in that amount plus interest and costs. The buyer appeals, contending that the judge erred in concluding that the buyer in fact had a mortgage commitment on October 31,2001. We affirm.
Pastuisaca, a disabled Ecuadorian immigrant with little education and minimal skills in English, became interested in acquiring a residence. After consulting with a mortgage broker, he was told he could obtain a “no income verification” mortgage based upon his credit report, notwithstanding that his sole reported source of income was a monthly benefit check from Social Secu *97 rity because of disability.[3] Pastuisaca was introduced to the properly that became the subject of the purchase & sale agreement by a real estate broker. After viewing the properly, he submitted a written offer to purchase the property for the sum of $265,000. An initial binder of $500 accompanied the offer to purchase and remains in the hands of the broker. The offer included the mortgage contingency clause previously described. The buyer promptly filled out a mortgage loan application at the office of the mortgage broker, which was promptly transmitted to Countryside Home Loans (hereinafter, the lender). On or about October 18, 2001, the buyer executed a purchase and sale agreement and delivered a check for $26,000 to the broker. The buyer became disenchanted with the agreed upon purchase and issued a “stop payment’ order regarding the deposit check. This occurred a week after delivery of the check to the broker. The record reflects that the buyer found another residence more to his liking. The buyer informed the mortgage broker that he no longer wished to purchase the residence at 55 Partridge Valley Road because he had found a different property that he wished to purchase. The broker reminded the buyer that he had a legally binding contract which he could ignore only at his peril.
On October 30,2001, the lender submitted a document to the buyer’s mortgage broker evincing approval of the loan request subject to a number of conditions which were routine and which were easily met. Among these were submission of comparable properties with similar in-law apartments.
Mortgage approvals are by their very nature dependent on the fulfillment of express or implied conditions. Among these are septic approvals and the implied condition that the security offered not be impaired or degraded, the marketability of title at the time of closing and the like. Here was a definite approval on the terms specified in the mortgage contingency clause with a number of conditions that were commercially reasonable. Lynch v. Andrew, 20 Mass. App. Ct. 623, 626 (1985). None of the conditions were unduly onerous. Id. at 626. Timely notice that the mortgage had been approved had been provided to the brokers who were agents of the buyer. The mortgage contingency clause was not affected by the absence of a written commitment letter to the buyer. The stop payment order was a repudiation of the agreement by the buyer and entitled the seller to invoke her rights to obtain the deposit under the liquidated damages clause. The buyer sent notice to the seller informing her of his intent to terminate the agreement based upon his alleged inability to obtain the requisite financing commitment This also was an unequivocal repudiation excusing any requirement of a tender of performance by the seller. See Schilling v. Levin, 328 Mass. 2, 5 (1951). Tender of performance is excused if the defaulting party has shown he cannot or will not perform. Leigh v. Rule, 331 Mass. 664, 668 (1954). A mortgage contingency clause is not intended to afford a haven to a buyer not acting in good faith seeking an escape from the agreement See Berry v. Nardozzi, 362 Mass. 145, 149 (1972). The “stop payment’ of the deposit check and his disclosure to the broker that he had found another residence he preferred tend to support the inference of lack of good faith.
The judge was warranted in finding that the mortgage financing contingency was met on October 31,2001. On that date, the mortgage broker informed the real estate agent that the application for financing had been approved, subject to receipt of appraisals for comparable properties with separate cooking facilities, commonly referred to as “in-law” apartments. This condition was readily met On October 25, 2001, the broker became aware that the buyer had stopped payment on the deposit check and had become disenchanted with proceeding with the agreement because he found another residence he preferred. The buyer was cautioned by the broker that he *98 ought to get legal advice because he had a contract to purchase the properly, which was the subject of the agreement, conveying the notion that adverse consequences might result from repudiating the contract Even if one were to credit the buyer’s assertion that he did not have a written commitment in hand on October 31,2001, he would not prevail. First, there is nothing in the agreement that he have a written commitment The fact that the bank requested further data concerning comparable sales of dwellings with “in-law” apartments did not void the commitment in any way. Typically, mortgage commitments envision the fulfillment of some reasonable requirements. In the absence of unequivocal language to the contrary, the law presupposes that the buyer will accept and perform commercially reasonable requirements associated with a mortgage commitment. Lynch v. Andrew, 20 Mass. App. Ct. 623, 626 (1979). Finally, the mortgage broker and real estate agent were essentially agents of the buyer for purposes of receipt of notice of the mortgage commitment. The often stated bromide to the effect that the knowledge of the agent is imputed to the principal applies. DeVaux v. American Home Assurance Co., 387 Mass. 814, 818 (1983). Stated differently, when an agent acquires knowledge in the course of his or her employment, the principal is held to have constructive knowledge of such information. Bockser v. Dorchester Mut. Fire Ins. Co., 32 Mass. 473, 477-478 (1951); Restatement: Agency, §§268, 272. The judge was warranted in concluding that the qualifications attached to the mortgage commitment were commercially reasonable and were not “unduly onerous.” See Mentis v. Elm Street Trust, 1999 Mass. App. Div. 50, 52.
Appellant offered no argument as to whether the forfeiture of deposit clause was so unconscionable that it amounted to a penalty. See Kaplan v. Gray, 215 Mass. 269, 270-273 (1913). See Kelly v. Marx, 428 Mass. 877 (1999) (reasonableness of forfeiture of deposit clause is based upon analysis of circumstances existing at the time the contract was made, and not at the time of the breach).
The judgment is affirmed.
So ordered.

 “In order to help finance the acquisition of said premises, the buyer shall apply for a conventional mortgage loan of $238,500 at prevailing rates, terms and conditions. If, despite the buyer’s diligent efforts a commitment for such loan cannot be obtained on or before October 31,2001, the buyer may terminate their agreement by written notice to the seller and/or broker (s) as agents for seller, prior to the expiration of such time, whereupon any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. In no event will the buyer be deemed to have used diligent efforts to obtain such commitment unless the buyer submits a complete mortgage loan application on or before October 17,2001.”

 “If the buyer shall fail to fulfill the buyer’s agreements herein, all deposits made hereunder shall be retained by the seller as liquidated damages. This shall be the seller’s sole remedy both at law and equity for any default by the buyer under this agreement.”

 It might fairly be stated that the buyer whose reported income was limited to Social Security disability assistance was ill served by the mortgage broker in suggesting that he attempt to proceed with such application and purchase. This consideration does not in any way affect the rights and liabilities of the buyer and seller.